THE VILLAGE OF DOWNERS GROVE, Petitioner-Appellant, v. THE IL-
LINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents-Appel-
lees.

Second District   No. 2—91—0046

Opinion filed October 31, 1991.

Bruce C. Mackey, of Klein, Thorpe & Jenkins, Ltd., of Chicago (Karl R. Ottosen, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield, and Jacalyn J. Zimmerman, of Illinois State Labor Relations Board, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

John F. Ward, Jr., and Carmell, Charon, Widmer & Mathews, Ltd., both of Chicago (Lisa Beth Moss, of counsel), for respondent Downers Grove Firefighters Association Local 3234.

JUSTICE INGLIS delivered the opinion of the court:

Petitioner, the Village of Downers Grove (Village), seeks administrative review of certain orders of the respondent, the Illinois State Labor Relations Board (Board), pursuant to section 9(i) of the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 1609(i)). The orders directed election and certified respondent, the Downers Grove Firefighters Association, IAFF, Local 3234 (Local 3234), as the exclusive bargaining representative of a bargaining unit. The bargaining unit includes full-time fire fighters, fire engineers, fire lieutenants, captains, paramedics and the director of emergency medical services (EMS). Petitioner contends that the Board erred in including the captains and the director of EMS in the bargaining unit

as these positions are supervisory as defined by section 3(r) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 1603(r)). We affirm the actions of the Board.

The Village of Downers Grove Fire Department (Department) has one chief, three assistant chiefs, five captains, five lieutenants, five engineers, 18 fire fighters, 11 paramedics, one director of EMS, two fire inspectors and the director of fire prevention. The Department maintains five fire stations, with one captain assigned to each station. The captain's staff at station three, the headquarters, includes one lieutenant, one engineer and six fire fighters. The captain's staff at the remaining four stations includes one lieutenant, one engineer and three fire fighters. The director of EMS, along with five other paramedics, are assigned to station three. The remaining six paramedics are assigned to station five, the training station. The captains, lieutenants, engineers and fire fighters work from 7 a.m. to 6 p.m. every day except Sunday. The paramedics, including the director of EMS, work a schedule of 24 hours on duty and 48 hours off duty on rotating four-man shifts.

The record on appeal contains thorough background information pertaining to job descriptions, working hours, and compensation for the various employees in the Department. For purposes of this appeal, we need only concentrate on the duties of the employees in question: captains and the director of EMS.

The captain, who is frequently the highest ranking employee working the shift, is the officer in charge at the station. The officer in charge is responsible for staffing and the overseeing of station operations. At the beginning of the shift, the captain inspects the station and the equipment to ensure it is in proper working order and discusses any problems that occurred on the preceding shift. After a coffee break with the off-going shift, the captain oversees the performance of daily maintenance duties. These duties include general cleaning and upkeep of the station. After these duties are completed, the daily assignments are performed, which include training exercises and fire inspections of local businesses and major equipment. The captain determines the scheduling of inspections.

When the captain and the subordinates are not performing daily tasks, they work on committee assignments and special projects. All ranks have the opportunity to be appointed to a committee. The chief and assistant chiefs appoint committee members and chairpersons. Committee chairpersons may be of any rank. Committees include the air compressor operation and maintenance committee, the fire investigation and ground ladder testing committee and the hazardous mate-

rials committee. The committees make recommendations to the chief and assistant chiefs.

Each of the five captains also has department-wide duties. The captain at station number one schedules all department personnel. The captain at station number two prepares and maintains department payroll. The department's budget is reviewed by the captain at station number three. The department's purchasing officer is the captain at station number four. The captain at station number five reviews and revises department rules, regulations and procedures and recommends changes to the chief and assistant chiefs. Station number five captain is also the liaison with the Village dispatching center.

In the event of a fire, the highest ranking person on the scene, usually a captain or lieutenant, is the incident commander. The incident commander evaluates the situation and makes tactical decisions in deploying incoming units. The main duty of the incident commander is to coordinate fire suppression and maintain communication with the dispatch center. At large fires, the incident commander will be an assistant chief, with support from station captains.

The captains perform other administrative duties as well. The captains are responsible for evaluating their station lieutenants. The captains and lieutenants together evaluate station engineers and fire fighters. All Department employees are evaluated every six months. The evaluations are completed, discussed with the individual employee and are forwarded to the chief and assistant chiefs, who apply the evaluation to the Village-wide matrix system to determine merit increases in pay. Probationary employees are evaluated by captains, who determine whether to grant permanent status, extend the probationary period or dismiss the employee. As of the time of the hearing officer's decision, no probationary employee had been denied permanent status upon a recommendation by a captain.

Once a year, the captain must determine what line items will be requested for the station for the next fiscal year. The subordinates list their requests. The captain reviews the list and submits it to an assistant chief. The three assistant chiefs discuss the requests with all the captains, but the chief and assistant chiefs ultimately determine what items will be included in the budget presented to the Village. The Department has a five-year budget plan for large ticket items for which the captains also make recommendations.

A captain has no authority to hire, lay off, recall, promote, discharge, reward or permanently transfer. The captain has authority to give reprimands, either oral or written, and recommend suspensions. The ultimate responsibility for disciplining employees lies with the

chief and assistant chiefs. The Board of Fire and Police Commissioners has the sole authority to hire and promote employees. Grievances are initially submitted to the station captains as a first step of the grievance procedure. Minor grievances are usually informally resolved between the subordinate and the captain. Formal grievances are resolved by the chief and assistant chiefs.

The director of EMS performs a number of administrative and paramedic functions. The director is responsible for the functioning of paramedics in the field. The director also heads paramedic crew meetings and training sessions and participates on the same committees as fire fighting personnel. When the director's home station, station number three, is dispatched on a call, the director serves as a paramedic. The Department averages six EMS calls per day.

When not responding to a call, the director performs administrative responsibilities. One primary duty is to serve as liaison between Good Samaritan Hospital and the Department. The director attends bimonthly meetings with other Village paramedic coordinators and the hospital. Annual training budget proposals and determination of equipment needs are also handled by the director of EMS. The director researches products and completes purchase orders for equipment. The director works with local high schools to establish CPR training programs. The director recommends policy and procedural changes in the EMS program to the chief. The EMS director is also required to schedule paramedics. Personnel action reports are prepared by the director if subordinates' pay is reduced due to tardiness. Ambulance run reports are reviewed by the director to ensure full documentation.

The director of EMS has no hiring authority, but is a member of the committee for hiring paramedics. Applicants are interviewed and evaluated by the director, chief, assistant chief, and a chosen paramedic. The director conducts an employment and criminal background of the applicant, reporting results to the committee. After the committee ranks the applicant, the director recommends which individual should be hired.

The director has no authority to transfer permanently, suspend, lay off, recall, promote, reward or discharge an employee. The director has authority to issue written and verbal reprimands after consulting with an assistant chief. Formal reprimands are issued by an assistant chief.

Twice a year, the director of EMS evaluates paramedics in the same manner that captains evaluate their employees. Probationary evaluations are performed by directors in the same manner as performed by captains. The director is the first step of the grievance pro-

cedure for paramedics. Minor grievances are appealed to assistant chiefs, the chief and the Village manager. Formal grievances are not adjusted by the director of EMS.

The action in question began on June 23, 1989, when Local 3234 filed a petition with the Board for certification as the exclusive bargaining representative of certain employees. The employees included fire fighters, engineers, lieutenants, captains, fire inspectors, the fire prevention director, paramedics and the director of EMS. The Village opposed the petition arguing, *inter alia*, that captains and the director of EMS are "supervisors" under section 3(r) of the Act. The hearing officer determined that neither captains nor the EMS director is a supervisor. The hearing officer recommended Local 3234 be certified as the exclusive bargaining unit for the above-mentioned employees, excluding the fire inspectors and the fire prevention director.

On April 6, 1990, the Village filed a motion to supplement the record and exceptions to the hearing officer's recommended decision and direction of election. The Board issued its decision and order on July 13, 1990, finding that the captains and the EMS director are not supervisors within the meaning of the Act. The Board's order directed an election by employees in the bargaining unit. The Board also denied the Village's motion to supplement the record, concluding that the Village presented no compelling reason to reopen the record.

On August 29, 1990, the Village filed a motion for reconsideration and rehearing alleging that subsequent incidents of discipline by captains and the director of EMS called for reconsideration of whether captains and the EMS director are supervisors. The Village also sought a stay of the election. The Board denied the motion for reconsideration and rehearing, stating that the Board had no statutory authority to reconsider its decision in representation cases.

The election was conducted by the Board on August 30, 1990, with a 38 to 1 vote in favor of representation by Local 3234. The Village filed objections to the election, contending that the presence of the captains and the director of EMS tainted the election. The evidence presented by the Village to support the allegation was its previous motion to reconsider.

The executive director of the Board issued a report on challenges and objections to election, finding no reason to believe the election was objectionable. The Village later filed exceptions to the executive director's report on challenges and objections to the election.

On December 12, 1990, the Board affirmed the executive director's report and certified Local 3234 as the exclusive representative

of the bargaining unit. The Village now seeks administrative review of the Board's orders.

Although petitioner raises seven issues for review, these can be consolidated into the four issues which the petitioner actually argued in its brief. The Village contends that both the captains and the director of EMS are supervisors pursuant to section 3(r) of the Act. The Village seeks reversal of the Board's orders directing the election and certifying Local 3234 as the exclusive representative of the bargaining unit. The petitioner also contends that the Board had authority to reconsider its July 13, 1990, order directing election and its decision that the captains and the EMS director are not supervisors. In the alternative, the Village requests the matter be remanded to the Board for further hearings to determine the extent the captains and the director of EMS exercise supervisory authority.

The respondents, Local 3234 and the Board, contend that the Board properly determined that the captains and the director of EMS are not supervisors within the meaning of the Act. They also contend that the Board had no statutory authority to reconsider its July 13, 1990, decision and order. Finally, the respondents contend that remand is not appropriate because the supposed newly discovered evidence is cumulative.

Judicial review of the Board's action extends to all questions of law and fact presented by the record. The Board's findings and conclusions on questions of fact shall be held *prima facie* true and correct. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110.) The reviewing court may reverse the agency's findings of fact only if they are against the manifest weight of the evidence and it is clearly evident that the agency should have reached the opposite conclusion. (*Balmoral Racing Club, Inc. v. Illinois Racing Board* (1991), 214 Ill. App. 3d 112, 119.) Where the question is one of law, such as the interpretation of a statute, the agency's finding is not binding on the court. (*City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 507 (hereinafter *Village of Wheeling*).) While courts give deference to an agency's statutory interpretation, it is not binding and will be rejected if clearly erroneous. *Press v. Code Enforcement Board of Appeals* (1991), 213 Ill. App. 3d 307, 308.

■■ Section 3(r) of the Act defines a "supervisor":

" 'Supervisor' is an employee whose principal work is substantially different from that of his subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, or to adjust their grievances, or to effec-

tively recommend such action, if the exercise of such authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising such authority State supervisors notwithstanding." Ill. Rev. Stat. 1989, ch. 48, par. 1603(r).

The duties of lieutenants in the Village of Wheeling fire department, as described in *Village of Wheeling* (135 Ill. 2d 499), closely parallel the duties of captains and the EMS director in the Downers Grove fire department. Thus, the analysis provided by the Illinois Supreme Court in *Village of Wheeling* is extremely helpful in resolving the issue in the instant appeal of whether captains and the EMS director are "supervisors."

The court in *Village of Wheeling* divided the definition of "supervisor" under the Act into a four-part test. (135 Ill. 2d at 512.) The first prong of the test to determine if an employee meets the definition of "supervisor" under the Act is whether the employee's work is "substantially different" from that of the other employees. The Board did not conclusively determine that the captains and the EMS director performed work substantially different from other employees, but recognized that the *Village of Wheeling* rationale strongly favored that determination. Indeed, the captains' and the EMS director's duties are substantially different from those of the other employees, as was found of lieutenants in *Village of Wheeling*. Captains and the EMS director are responsible for the equipment and personnel assigned on their shift. They are also responsible for coordinating crews and equipment at the fire scene. They evaluate the employees, and the evaluations are used in calculating merit pay increases. The existence of authority and power to affect adversely the employment of subordinates makes the captains' and EMS director's work substantially different from that of the employees. *Village of Wheeling*, 135 Ill. 2d at 528.

The second factor under the "supervisor" definition is that the employee has the supervisory authority to perform one of the 11 supervisory functions designated in the Act. The authority to hire, promote, discharge and reward fire fighters is vested in the board of fire and police commissioners. (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—1 *et seq.; Village of Wheeling*, 135 Ill. 2d at 529.) The Board found captains and the EMS director had authority similar to lieutenants in *Village of Wheeling* in regard to direction and discipline of subordinates. But, the Board concluded that because the duties directed are

routine, the supervisory authority element under the Act is not satisfied. This is inconsistent with the rationale in *Village of Wheeling*. The court there found the lieutenants had authority to discipline, direct, suspend and adjust grievances. (135 Ill. 2d at 530.) The lieutenants had the authority to deal with employee complaints, personal disputes and equipment problems. (135 Ill. 2d at 530.) The captains and the EMS director have the same authority. Since only one of the supervisory functions need be met to satisfy the second prong of the test, the captains and EMS director have supervisory authority.

The third prong of the test is that the employees exercise independent judgment when exerting their supervisory authority. The Board found that the captains and EMS director do not exercise independent judgment, even though the court in *Village of Wheeling* found that lieutenants did while performing similar duties. The *Village of Wheeling* court found the lieutenants' authority to direct subordinates at the fire station is routine. (135 Ill. 2d at 531.) The authority at the fire scene is derived from the lieutenants' superior skill and expertise and does not require independent judgment "in the interest of the employer." (135 Ill. 2d at 532.) But, the court found independent judgment exerted when lieutenants exercised their authority to discipline and suspend, authority nearly identical to that of captains and the EMS director here. Such similar duties include issuing oral and written reprimands, issuing emergency summary suspensions and resolving minor grievances. (135 Ill. 2d at 526.) Following the *Village of Wheeling* precedent, captains and the EMS director indeed use independent judgment when exercising supervisory authority.

The final prong of the test is that the preponderance of employment time is spent performing supervisory functions. Both the Board in the appeal at bar and the court in *Village of Wheeling* found this element unsatisfied in the respective cases, with the Board relying on the *Village of Wheeling* rationale. The court in *Village of Wheeling* concluded that the lieutenants rarely exercised their authority to suspend or discipline fire fighters; thus, they did not spend more time exercising supervisory authority than performing any other nonsupervisory function. 135 Ill. 2d at 532-33.

The Board found that captains spend 40 hours a year performing evaluations and rarely issue reprimands or recommend actions for suspensions. The coordinating functions that captains perform at a fire scene amount to only a small percentage of overall work time. The director of EMS spends four to five hours a day performing administrative tasks, along with serving as a paramedic when dis-

patched. This leaves little time in which the director of EMS exercises supervisory authority. The court in *Village of Wheeling* interpreted the "exercise of supervisory authority" to mean an actual exercise of authority rather than being in a position of possessing supervisory authority. Strictly following *Village of Wheeling*, we find that the EMS director and captains fail to meet the fourth prong of the test.

The petitioner relies on the dissent in *Village of Wheeling* in arguing that the captains and the EMS director spend a preponderance of time exercising supervisory authority. Justice Miller disagreed with the majority's view of crediting only time spent actually performing supervisory functions in determining the "preponderance" factor. With that standard, it would be difficult to find any employee who would qualify as a supervisor. (135 Ill. 2d at 537.) Justice Miller believed the exercise of supervisory authority occurs whenever the employee is in a situation in which supervisory authority may be called upon. He further stated:

> "An employee then would be excluded from coverage under the act whenever a preponderance of his or her employment time is devoted to a position vested with that authority and the employee is placed in situations that require the exercise of independent judgment on when and how to use it. This interpretation of section 3(r) better facilitates the legislature's intent to exclude a certain class of company officers from the act's coverage." 135 Ill. 2d at 538.

Justice Miller's dissent has merit; however, the majority's strict interpretation of the Act requires the employees to "devote a preponderance of their employment time [in] *exercising* such authority." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 48, par. 1603(r).) Since the majority of the Illinois Supreme Court has construed this phrase to mean an active exercise of supervisory authority, this court will follow a similar interpretation. We hold that the captains and the EMS director are not supervisors as defined under the Act.

The petitioner also argues that the Board had statutory authority to reconsider its July 13, 1990, decision that the captains and the EMS director are not "supervisors." The Village asserts that the Board's decision was not a final order and was not final until the Board certified the results of the election on December 12, 1990, citing section 9(i) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 1609(i)).

The petitioner's reliance on section 9(i) of the Act is misplaced. The issue of whether an agency may reconsider its decision is not determined by the existence of a final order, but whether the agency has authority conferred by the statute to reconsider its deci-

sions. In *Caldwell v. Nolan* (1988), 167 Ill. App. 3d 1057, the court stated:

" 'It is settled that administrative bodies have only such powers as are conferred upon them by statute or ordinance.' ***

Consistent with this principle, the supreme court has held that 'an administrative agency may allow a rehearing, or modify and alter its decisions, only where authorized to do so by statute.' " 167 Ill. App. 3d at 1061.

■ In the instant appeal, the Act makes no mention of the Board's authority to reconsider its decision classifying the members of the bargaining unit. Thus, the Board properly refused to reconsider its determined bargaining unit. See Ill. Rev. Stat. 1989, ch. 48, par. 1609.

■ Finally, the petitioner requests that this matter be remanded so the Board may consider additional evidence. Section 3—111 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 3—111(a)(7)) allows remand when "such evidence is material to the issues and is not cumulative." The evidence presented by the petitioner demonstrates situations in which captains and the EMS director have exercised supervisory authority. The additional 13 incidents occurring over the course of nearly a year would not negate the finding that captains and the EMS director fail to exercise supervisory authority a preponderance of their working time. In fact, this evidence tends to support that holding. Thus, remand is inappropriate.

Based on the reasons set forth above, the orders of the Illinois State Labor Relations Board are affirmed.

Affirmed.

WOODWARD and GEIGER, JJ., concur.