THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KURT
P. EIDEL *et al.*, Defendants-Appellees.

Second District   Nos. 2—99—1303 through 2—99—1307, 2—99—1310,
2—99—1361 through 2—99—1364, 2—99—1380 through 2—99—1388,
2—00—0044 through 2—00—0048, 2—00—0050 through 2—00—0054,
2—00—0159 through 2—00—0162 cons.

Opinion filed March 15, 2001.

Joseph E. Birkett, State's Attorney, of Wheaton (Margaret M. Healy, Assistant State's Attorney, and Martin P. Moltz and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Steven D. Armamentos, of Ramsell & Associates, of Wheaton, for appellees Kurt P. Eidel, Joaquin Fuentes, Luke E. Kelly, James A. Rohrman, and Joseph E. Trimarco.

John P. Houlihan, of Mirabella & Kincaid, of Wheaton, for appellee Cheryl A. Murrell.

Frank J. DeSalvo and Todd M. Cowden, both of Law Offices of DeSalvo & Cowden, P.C., of Wheaton, for appellee Susan M. Platt.

JUSTICE BOWMAN delivered the opinion of the court:

The State appeals 33 circuit court orders granting the petitions of

the above-named defendants to rescind the statutory summary suspensions of their driver's licenses. Because the cases raise common issues of law, we have consolidated the appeals. For the reasons that follow, we reverse the judgments of the circuit court of Du Page County and remand the causes for further proceedings on the defendants' petitions.

Each defendant petitioned to rescind his or her summary suspension on grounds specified by section 2—118.1(b) of the Illinois Vehicle Code (Code) (625 ILCS 5/2—118.1(b) (West 1996)), then moved separately to rescind the suspension on constitutional grounds. In each case, the circuit court granted rescission solely on constitutional grounds. Later, in a separate case, the supreme court rejected these constitutional arguments. See *People v. Fisher*, 184 Ill. 2d 441 (1998). The supreme court then vacated the original rescission orders here and remanded the causes for reconsideration in light of *Fisher*.

Sometime after the supreme court's mandates were filed in the circuit court, the Secretary of State's office (Secretary or Secretary's office) sent each defendant a new "Confirmation of Summary Suspension" (Confirmation) stating that his or her license would again be summarily suspended as of a specified date. The Secretary mailed each Confirmation only a few days before the starting date of the new suspension. The defendants petitioned to rescind the suspensions, arguing that they had been denied their due process right to presuspension hearings and their statutory right to 46 days' notice of the new suspensions (see 625 ILCS 5/11—501.1(g) (West 1998)).

The circuit court granted the petitions and denied the State's motions to reconsider. The State timely appealed. On appeal, the State asserts that (1) section 11—501.1(g) of the Code did not require the Secretary to provide any defendant 46 days' notice of the new suspension; and (2) the defendants were not denied any constitutional right to a presuspension hearing.

Defendants Kurt P. Eidel, Joaquin Fuentes, Luke E. Kelly, James A. Rohrman, and Joseph E. Trimarco have jointly filed an appellees' brief. Defendants Cheryl A. Murrell and Susan M. Platt have filed separate appellees' briefs. All of the defendants who have filed briefs contend, in essence, that the Secretary's arbitrary precipitate resuspensions of their licenses violated both the Code and procedural due process.

## FACTS

For obvious reasons, we do not recite the facts of every case. We present the facts in *People v. Eidel* as paradigmatic.

On January 28, 1997, a police officer arrested Eidel (defendant)

for driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(2) (West 1996)) and warned defendant in writing that, if he refused or failed a chemical test, his license would be suspended summarily for the period provided by statute (see 625 ILCS 5/6—208.1 (West 1996)). Defendant refused testing. On February 4, 1997, defendant was charged by complaint with DUI and the arresting officer's "Law Enforcement Sworn Report" was filed in the circuit court. On February 11, 1997, the Secretary's office filed a Confirmation that told defendant that his license would be suspended effective March 15, 1997.

On February 26, 1997, defendant filed a petition to rescind his suspension. The petition listed a variety of statutory grounds for rescission (see 625 ILCS 5/2—118.1(b) (West 1996)). Defendant obtained a continuance. On April 23, 1997, before any hearing took place, defendant filed a "Motion to Rescind Statutory Summary Suspension" asserting that sections 6—208.1 and 11—501.1 of the Code (625 ILCS 5/6—208.1, 11—501.1 (West 1996)) violated due process and equal protection by discriminating against defendant and other adult non-first offenders who refused testing. On September 30, 1998, after a jury acquitted him of DUI, defendant filed another motion repeating these constitutional arguments. The State filed a response. Nothing in the record shows that defendant ever requested an evidentiary hearing on his original petition or that the State ever answered the original petition.

On October 15, 1998, the circuit court rescinded defendant's summary suspension. The court's written orders state that the rescission is based solely on the constitutional grounds defendant raised. We have no report of any hearing that might have resulted in these written orders. On October 16, 1998, the State filed a notice of appeal to the supreme court (see 134 Ill. 2d R. 302(a)).

On December 17, 1998, the supreme court filed its opinion in *Fisher*. The court rejected the precise constitutional theories on which the circuit court of Du Page County had relied to rescind defendant's summary suspension. See *Fisher*, 184 Ill. 2d at 449-56. On April 30, 1999, the supreme court's mandate in defendant's case was filed in the circuit court of Du Page County. The mandate states that, on April 6, 1999, the supreme court entered "the following judgment" in the appeal in defendant's case:

> "The motion by appellant to vacate the judgment of the Circuit Court of Du Page County and to remand this cause to the circuit court for reconsideration in light of this Court's decision in People v. Fisher et al. *** is allowed and this cause is remanded."

On May 3, 1999, the circuit court clerk of Du Page County filed a "No-

tice of Receipt of Reviewing Court Mandate." The notice, addressed to both the State's Attorney and defendant, states that the reviewing court's mandate has been filed in the circuit court; that the case has been ordered "~~REVERSED &~~ REMANDED"; and that "To reactivate this matter, please file your Notice of Motion in accordance with court rules." There is nothing in the record to prove that either party was sent this notice.

On July 22, 1999, the Secretary filed a new Confirmation with the circuit court. This document states that defendant's license will be suspended for 24 months effective July 27, 1999.

On August 20, 1999, the State's Attorney filed a notice of motion stating that on August 26, 1999, an assistant State's Attorney would appear in this case "For spreading of record." On August 26, 1999, the circuit court entered an order stating that, after a hearing, the State's motion is granted and the supreme court's mandate "is spread of record"; the circuit court's prior order holding the statute unconstitutional is vacated; and the summary suspension of defendant's driver's license stands, "pending motions." On that day, defendant's counsel filed his appearance.

On September 2, 1999, defendant filed a new motion to rescind his summary suspension. This motion alleged the following. At various times between about April 13, 1999, and May 3, 1999, the circuit court clerk forwarded "Mandates" to the State and to counsel for the 33 defendants here. The supreme court's mandate in defendant's case was filed May 3, 1999. Defendant believed that the State was served with copies of all the supreme court's orders in these cases. However, he was never served with the supreme court's order in his case. Between July 20 and July 24, 1999, the Secretary sent all the defendants Confirmations of the new summary suspensions. These new suspensions were to start between July 27 and August 2, 1999. On July 22, 1999, the Secretary filed a new Confirmation in defendant's case, making his suspension effective July 26, 1999.

Defendant's motion argued that the Secretary's procedure was improper for two reasons. First, the shortness of the interval between the issuance of the Confirmation and the effective date of the new suspension—12 days—violated section 11—501.1(g) of the Code (625 ILCS 5/11—501.1(g) (West 1998)), under which a summary suspension is to take effect 46 days after notice is given to the motorist. Second, the shortness of this interval, in part caused by the State's Attorney's delay in notifying the Secretary of the supreme court's mandate, effectively deprived defendant of his due process right to a presuspension hearing.

The State filed a response alleging in part as follows. The State and all the defendants received notice of the remands. The State tried to preserve judicial economy "by waiting to place cases on the call only when substantive action was to commence"; thus, after the Secretary issued the new Confirmations, the State put the cases back on the call so as to spread the mandates of record and enable defendants such as Eidel to set the cases for hearing.

The State argued that, when the defendants filed their original petitions to rescind their summary suspensions, all of them had the opportunity for presuspension hearings on any issues they wished to raise. Indeed, the State noted, each defendant received a presuspension hearing and prevailed when the circuit court rescinded his or her suspension on constitutional grounds. The State reasoned that, if the defendants elected to forgo litigating the statutory grounds for rescission in favor of relying on the theories later rejected in *Fisher*, they had themselves to blame if they did not receive full presuspension hearings.

The State also argued that the procedures used on remand did not violate section 11—501.1(g) of the Code because that section states only that a summary suspension is to take effect 46 days after "the notice of the statutory summary suspension" (625 ILCS 5/11—501.1(g) (West 1998)) is given to the defendant. According to the State, the "notice" in this section is that which the officer gives the motorist before asking the motorist to take a chemical test, not the Confirmation that the Secretary issues later. Thus, the State complied with section 11—501.1(g) at the outset of each case, when the Secretary informed the defendant that his or her suspension would start 46 days from the receipt of the officer's warning. As section 11—501.1(g) did not affect the validity of the Secretary's action after a case was remanded, the Secretary could impose a new suspension that started fewer than 46 days after the defendant received the new Confirmation.

The trial court granted defendant's motion to rescind, holding that the new suspension was invalid because (1) the Secretary's decision to resuspend defendant's license within 12 days of mailing the new confirmation was "arbitrary and without statutory authority"; and (2) defendant was effectively denied any chance for a presuspension hearing. The trial court denied the State's motion to reconsider. The State timely appealed. As noted, we have consolidated this appeal with 32 other appeals.

## ANALYSIS

On appeal, the State reiterates the arguments it made at the trial

level and asserts that the trial court erred in rescinding the summary suspensions that were imposed after the original rescission orders were vacated and the causes were remanded. The State appears to assume that, after the vacatur of the original rescission orders, each defendant's driver's license was not suspended again until the date specified in the new Confirmation. The State concedes that each new Confirmation was mailed only a few days before the starting date of the new suspension, essentially denying any defendant a hearing before the start of the new summary suspension. However, the State contends that each defendant was entitled to no more than a prompt hearing shortly after the start of each new suspension and that each defendant received one.

The defendants who have filed appellees' briefs respond that (1) section 11—501.1(g) of the Code required the Secretary to place at least 46 days between a defendant's receipt of the new Confirmation and the starting date of the new suspension; and (2) they were denied their due process right to prompt hearings on their petitions to rescind the new suspensions. These defendants also claim that the State's Attorney's office is to blame for the short notice of the impending suspensions, as it unjustifiably delayed reinstating the cases in the circuit court. The defendants assert that, on remand, the Secretary had to reinstate the cases promptly or lose its right to relief. For the reasons that follow, we agree with the State that the rescission judgments cannot stand. We do not endorse all the State's reasoning.

■ We hold first that section 11—501.1(g) of the Code does not support the judgments. Resolving this issue turns on the meaning of a statute, a question of law that we address *de novo*. See *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995). We seek to ascertain the legislature's intent, the best guide ordinarily being the statutory language itself. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). If this language is unambiguous, we must follow it. *Branson*, 168 Ill. 2d at 254. We must read a statute as a whole, with every part construed in connection with every other part. *Lulay v. Lulay*, 193 Ill. 2d 455, 466 (2000). We believe that the State's reading of section 11—501.1(g) is correct in the main and that the trial court misinterpreted this provision.

■ Section 11—501.1 of the Code sets out the protocol for statutory summary suspensions. (Those parts of section 11—501.1 pertinent to these appeals have not been materially amended since these cases began.) Under section 11—501.1(e) (625 ILCS 5/11—501.1(e) (West 1998)), the Secretary's office shall enter a summary suspension "[u]pon receipt of the sworn report of a law enforcement officer." Section 11—501.1(f) requires the officer submitting the sworn report to

"serve immediate *notice of the statutory summary suspension on the person.*" (Emphasis added.) 625 ILCS 5/11—501.1(f) (West 1998). Section 11—501.1(g), at issue here, provides in turn that the summary suspension "shall take effect on the 46th day following the date *the notice of the statutory summary suspension was given to the person.*" (Emphasis added.) 625 ILCS 5/11—501.1(g) (West 1998). Reading these related provisions together, we think section 11—501.1(g)'s meaning is plain. The "notice" is that which the officer gives the motorist on the scene. Thus, section 11—501.1(g) is a self-executing provision under which a summary suspension starts 46 days after the officer serves the motorist with notice that the motorist's license is to be suspended.

■ Insofar as section 11—501.1(g) applies here, it does not support the rescissions of the defendants' suspensions. We use Eidel's case as illustrative. The officer who stopped Eidel on January 28, 1997, asked Eidel to submit to a chemical test. When Eidel refused, the officer immediately served him with a written notice that his license would be suspended for a minimum of six months, with the suspension to take effect on the forty-sixth day following the issuance of the written notice. The Secretary then mailed Eidel a Confirmation stating that his summary suspension would start March 15, 1997, 46 days after January 28, 1997. Therefore, insofar as it is possible to speak of the State "complying" with a self-executing provision, the State did so here.

However, each defendant who has filed a brief asserts that section 11—501.1(g) not only required the original summary suspension to start no fewer than 46 days after the officer's warning but further required a 46-day window between the date a defendant received the new Confirmation and the starting date of the new suspension. For two reasons, we reject this claim.

First, the defendants' argument ignores the plain language of section 11—501.1(g), which ties the 46-day waiting period only to the arresting officer's issuance of the original on-the-scene notice. Second, the argument rests on the assumption that, after the original summary suspensions were vacated and the causes remanded, the Secretary needed to issue new Confirmations in order for the defendants' licenses to be suspended again. However, we believe that any defects in the new Confirmations are immaterial because the new Confirmations themselves were superfluous. When the supreme court vacated the original rescission orders, the defendants' licenses were *automatically* resuspended. Thus, there was no need for the Secretary to issue new Confirmations, and any deficiencies in them cannot support the rescission orders here.

We believe this conclusion follows from the nature of the proceed-

ings at issue. A summary suspension is not a judicial act but an administrative function of the Secretary. *Koss v. Slater*, 116 Ill. 2d 389, 395 (1987). A defendant may challenge this administrative order by seeking a hearing, which may result in a judgment rescinding the Secretary's order. The rescission undoes the administrative summary suspension, at least prospectively. *People v. Focia*, 287 Ill. App. 3d 767, 769 (1997).

In the cases at bar, the trial court rescinded the summary suspensions. On appeal, the supreme court vacated the trial court's judgments. To "vacate" a judgment is to nullify or cancel it. Black's Law Dictionary 1546 (7th ed. 1999). A judgment that has been vacated is void. *New York Life Insurance Co. v. Sogol*, 311 Ill. App. 3d 156, 158 (1999); *Kelch v. Watson*, 237 Ill. App. 3d 875, 877 (1992). It is "entirely destroyed." *People v. Baker*, 85 Ill. App. 3d 661, 663 (1980). The vacatur restores the parties to the status quo *ante*, as though the trial court judgment had never been entered. *Sogol*, 311 Ill. App. 3d at 158; see also *Williamsburg Village Owners' Ass'n v. Lauder Associates*, 200 Ill. App. 3d 474, 483 (1990) (ascribing similar effect to reversal). Thus, where a trial court reverses an administrative order but the court of review vacates that judgment, the original administrative decision is restored as though the trial court had never disturbed it. See *Sexton v. Greer*, 135 Vt. 343, 376 A.2d 750 (1977) (vacatur of trial court order reinstating laid-off police officer left officer with only seniority he had when he was terminated; seniority could not accumulate during life of judgment that was later vacated).

Applying these principles, we conclude that, because the new Confirmations were superfluous, any defects in them were of no moment. In each case, the supreme court's vacatur of the original rescission order restored the parties to their preexisting status, as though the original rescission order had never existed. This means that the supreme court's act revived the original administrative order summarily suspending the defendant's license.

Because the supreme court *automatically* restored each defendant's original summary suspension, there was no need for the Secretary to issue a "new" suspension. In each case, there was only *one* suspension and the Secretary needed to act only once. At the least, each original suspension was revived by the time the appropriate supreme court mandate was filed in the circuit court. We conclude that the State did not violate section 11—501.1(g) of the Code.

We now turn to the second ground on which the trial court rescinded the summary suspensions: that the defendants were denied their due process right to a hearing before (or shortly after) the effective dates of the new suspensions.

■ Although due process does not entitle a motorist to a presuspension hearing, it does require a prompt postsuspension hearing. *Mackey v. Montrym*, 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612 (1979); *People v. Gerke*, 123 Ill. 2d 85, 91-92 (1988). The defendants argue, and the trial court held, that the Secretary effectively deprived the defendants of a prompt postsuspension hearing when it issued the new confirmations only a few days before the effective date of the new suspensions.

■ We disagree. As we have explained, there was only one summary suspension in each case, and each defendant received a full opportunity for a presuspension hearing on any grounds he or she sought to raise. We take defendant Eidel's case as illustrative. On January 28, 1997, Eidel was warned that his license would be suspended effective March 15, 1997. Under the Code, he had the right to a full hearing no later than 30 days after the receipt of his written request for one or the first appearance date listed on the traffic citation (see 625 ILCS 5/2—118.1(b) (West 1996)). Eidel did in fact file his petition on February 26, 1997, about a month before his suspension was to start. Had he not obtained a continuance, he could have had a full hearing on all the issues he raised as early as March 26, 1997, only one day after the suspension started. Holding a hearing one day after a suspension takes effect satisfies due process. *Gerke*, 123 Ill. 2d at 91-92.

The facts in the other defendants' cases are not materially different. Each defendant received only *one* suspension, predicated on one set of facts, and subject to a prompt hearing at which the defendant could and did raise any grounds he or she desired to establish that the suspension was erroneous. Indeed, each defendant *had* a prompt hearing at which he or she prevailed, albeit only temporarily. The original hearings did not adjudicate all the issues that the defendants raised in their petitions. However, as far as the records disclose, that is only because the defendants themselves opted not to pursue any statutory grounds for rescission, instead staking their hopes on the constitutional arguments later rejected in *Fisher*.

We turn finally to the defendants' claim that the trial court properly rescinded their summary suspensions because the State failed to reinstate the causes within a reasonable time after the supreme court's mandate was filed in the circuit court. The defendants rely on opinions interpreting and applying Supreme Court Rule 369(c) (134 Ill. 2d R. 369(c)), which governs trial court proceedings after a remand. These opinions hold that a trial court may dismiss a case when the party that prevailed on appeal fails to reinstate the case within a reasonable time. See *People v. NL Industries, Inc.*, 297 Ill. App. 3d 297 (1998); *National Underground Construction Co. v. E.A. Cox Co.*, 273

Ill. App. 3d 830 (1995). We believe that the defendants read these opinions out of context.

We must note that, in rescinding the defendants' summary suspensions, the circuit court did not rely on Rule 369(c) or the opinions holding that the rule allows trial courts to dismiss cases in some situations. Instead, the circuit court relied on due process and the Code and granted the defendants relief on the merits. We now address defendants' Rule 369(c) argument.

■ Supreme Court Rule 369(c) states, "When the reviewing court remands the case for a new trial or hearing and the mandate is filed in the circuit court, the case shall be reinstated therein upon 10 days' notice to the adverse party." 134 Ill. 2d R. 369(c). Rule 369(c) replaced section 88 of the Code of Civil Procedure (Ill. Rev. Stat. 1965, ch. 110, par. 88), under which the party that prevailed on appeal had to file the reviewing court's mandate within a specified time or lose its right to pursue the relief granted by the reviewing court. See Ill. Rev. Stat. 1965, ch. 110, pars. 88(2), (3); *Miller v. Bloomberg*, 126 Ill. App. 3d 332, 337-38 (1984). However, Supreme Court Rule 368(a) (155 Ill. 2d R. 368(a)) requires the reviewing court to transmit its mandate to the circuit court and to provide notice to the parties, and Rule 369(a) requires the circuit court to file the mandate promptly (134 Ill. 2d R. 369(a)). Thus, under the present rules, the circuit court automatically reacquires jurisdiction even if the prevailing party has not acted, although notice to the losing party is still required before new proceedings may start. See *Bank of Viola v. Nestrick*, 94 Ill. App. 3d 511, 514-15 (1981).

The adoption of the new rules changed the prevailing party's burden. Under section 88(2), the winner on appeal had both to file the mandate timely and to reinstate, *i.e.*, redocket, the case before he could obtain the relief available on remand. See *Miller*, 126 Ill. App. 3d at 338; *Tidwell v. Smith*, 43 Ill. App. 2d 9 (1963) (abstract of opinion). After Rules 368 and 369 took effect, the prevailing party had no need to file the reviewing court's mandate. However, perhaps illogically, some courts continued to give the prevailing party the burden to pursue the action by redocketing the cause. See *Miller*, 126 Ill. App. 3d at 338.

Because Rule 369(c) does not specify when the prevailing party must act, several opinions have held that the prevailing party must redocket the case within a reasonable time or lose its right to pursue relief on remand. Thus, in *E.A. Cox*, the trial court granted the defendant summary judgment. The appellate court reversed and remanded the cause, but the plaintiff waited almost two years to move to reinstate the case. The trial court refused to reinstate the case. The appel-

late court affirmed, explaining that the prevailing party must pursue its rights after the mandate issues and that, if it fails to reinstate the case within a reasonable time, the circuit court may in its discretion dismiss the case. Thus, the plaintiff forfeited its right to pursue its claim further. *E.A. Cox*, 273 Ill. App. 3d at 836-37.

Similarly, in *NL Industries*, the plaintiffs obtained a supreme court judgment reversing the dismissal of their complaint and remanding the cause. The plaintiffs delayed moving to reinstate the case until almost nine months after the supreme court's mandate issued. The trial court refused to reinstate the case and dismissed the action with prejudice. Relying on *E.A. Cox*, the appellate court affirmed, explaining that the plaintiffs did not have an unlimited time after the remand in which to reassert their rights. *NL Industries*, 297 Ill. App. 3d at 303.

The defendants who have filed appellees' briefs in these appeals urge that *E.A. Cox* and *NL Industries* support the judgments that are on appeal. These defendants reason that, upon remand, the State had the duty to reinstate the cases within a reasonable time and that, as the State failed to do so, the circuit court properly rescinded the defendants' summary suspensions. We disagree.

In *E.A. Cox*, as in *NL Industries*, the prevailing party, the plaintiff, *had* to reinstate the case to start the trial process moving again— otherwise, it would not be able to obtain any relief on its complaint. The reviewing court in each case simply held that, by failing to act promptly, the plaintiff lost its right to take the further steps necessary to prevail on its claim. Because the plaintiff needed to act to secure the benefit of the reversal, its delay in reinstating the case was inherently suicidal.

The cases here sit altogether differently. Here, each defendant sued to rescind his or her summary suspension, and each defendant needed to see the trial process through to completion in order to obtain the relief that he or she sought. The State did not need to invoke the judicial process in the first instance, as the Secretary's administrative act effectuated the summary suspension. When the supreme court vacated the rescission order and remanded the cause for further proceedings, the State had no need to reinstate the defendant's lawsuit in order to take advantage of the supreme court's decision. The State had already received all it wanted when the supreme court undid the first rescission order. The *defendant* had to pursue the matter further to prevail in a suit where he or she had the burden of proof. *People v. Orth*, 124 Ill. 2d 326, 337-38 (1988).

*E.A. Cox* and *NL Industries* do not suggest otherwise. They simply embody the commonsense rule that a party who does not act is saddled

with the result of his inaction, including the possible dismissal of a suit he has filed. In the cases at bar, the State did not lose anything by its inaction because the supreme court's orders simply restored the original administrative summary suspensions. Insofar as the State failed to act timely on these orders, it risked forgoing whatever benefit it might have gained from pursuing further proceedings on remand. However, the State did not forfeit the benefit already inherent in the supreme court's orders vacating the judgments. In some circumstances, a circuit court may prevent a party from proceeding further at the trial level, but the court cannot undo the judgment of a higher court.

We conclude that the State's delay in reinstating the cases at bar does not support the orders rescinding the defendants' summary suspensions. As no other grounds exist for these judgments, they must be reversed and we must remand the causes so that the defendants may be heard on any remaining issues presented by their actions to rescind their summary suspensions. Although the circuit court has never addressed the statutory grounds the defendants raised, we cannot say as a matter of law whether the defendants have abandoned these various grounds for rescission. Of course, we cannot say whether any defendant should ultimately prevail on any of these statutory grounds or any other grounds that the circuit court may allow him or her to raise on remand. It is for the circuit court to sort out the remaining issues attendant to the final dispositions of these cases at the trial level.

The judgments of the circuit court of Du Page County are reversed, and the causes are remanded for further proceedings consistent with this opinion.

Reversed and remanded.

McLAREN and O'MALLEY, JJ., concur.