TIMOTHY S. APPLEGATE, Plaintiff-Appellee and Cross-Appellant, v. THE DEPARTMENT OF TRANSPORTATION *et al.*, Defendants-Appellants and Cross-Appellees.

Fourth District No. 4—01—0582

Opinion filed November 15, 2002.

MYERSCOUGH, P.J., specially concurring in part and dissenting in part.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Bryan J. Rose and Jerald S. Post (argued), Assistant Attorneys General, of counsel), for appellants.

Paul E. Adami (argued), of Mohan, Alewelt, Prillaman & Adami, of Springfield, for appellee.

JUSTICE TURNER delivered the opinion of the court:

In June 1999, plaintiff, Timothy S. Applegate, was discharged from his employment at defendant, the State of Illinois Department of Transportation (Department). Plaintiff filed a grievance, and in February 2000, defendant Kirk Brown, Secretary of the Department (Secretary), issued a final administrative decision finding that Applegate had been properly discharged. In March 2000, Applegate filed a complaint for administrative review. In November 2000, Applegate filed a second-amended complaint for judicial review by common-law writ of *certiorari* and for declaratory judgment. In June 2001, the circuit court held that Applegate's employment was wrongfully terminated and he was entitled to be reinstated with back pay. The circuit court also denied Applegate's request for attorney fees under section 10—55(c) of the Illinois Administrative Procedure Act (Administrative Procedure Act) (5 ILCS 100/10—55(c) (West 1998)). Defendants appeal, and Applegate cross-appeals. We affirm in part, reverse in part, and reinstate the Secretary's decision.

## I. BACKGROUND

The record before us contains the following facts. At the time of his June 1999 discharge, Applegate was permanently employed full-time with the Department as a certified engineering technician IV. As a technical employee, he was exempt from the Illinois Department of Central Management Services' personnel code. The Department's personnel policies manual clearly states at the front that it "does not constitute a contract of employment." However, section 4—11(D)(1) of the manual states that "[a]n employee may be discharged only for just cause."

In November 1991, Applegate was arrested outside of working hours and charged with driving under the influence of alcohol (DUI). People v. Applegate, No. 91—TR—1962 (Cir. Ct. Cumberland Co.). Applegate also had his driver's license summarily suspended. In March 1992, the charge was amended to reckless driving, to which Applegate pleaded guilty. Pursuant to section 8—3(C)(3)(a) of the Department's personnel policies manual, Applegate requested and received an unpaid general leave of absence, effective April 1, 1992, not to exceed 90 days, until he obtained a license or permit. On May 12, 1992, the circuit

court of Cumberland County rescinded Applegate's statutory summary suspension after finding no reasonable grounds to believe that he committed a DUI. Applegate returned to work the following day.

In March 1999, Applegate was again arrested outside of working hours and charged with DUI. People v. Applegate, No. 99—DT—27 (Cir. Ct. Christian Co.). After Applegate's license was summarily suspended in May 1999, the Department suspended him without pay and notified him of a pretermination hearing to discuss the charge of a second suspension of his driver's license while employed by the Department. Applegate called during the meeting but did not attend. Following the meeting, the Department notified Applegate that his employment was being terminated effective June 2, 1999, for cause, that cause being the violation of section 8—3(C)(4) of the Department's personnel policies manual, which states, "A second suspension or revocation of an employee's driver's license while employed by the Department shall be cause for discharge."

Following his termination in June 1999, Applegate filed a grievance with the Department pursuant to the procedures in its personnel policies manual. Applegate's grievance was denied at the local and intermediate levels. Applegate next submitted his grievance to the Secretary for final determination. Pursuant to the grievance procedure, the Secretary appointed a three-member panel and a review moderator to hear the grievance at the final level.

In May 1999, Applegate filed a motion in the circuit court of Christian County to rescind his statutory summary suspension. In August 1999, Applegate completed his statutory summary suspension. In September 1999, Applegate was acquitted of DUI following a jury trial. On January 5, 2000, the circuit court of Christian County rescinded Applegate's statutory summary suspension on the State's motion.

On January 11, 2000, the grievance panel convened, and prior to the hearing, the review moderator requested Applegate and his attorney turn off any tape recorders. Applegate's attorney intended to tape-record the hearing because no court reporter was present. Section 4—12(D)(3)(b) of the personnel policies manual states, "There will be no record made of the review other than that made or ordered by the moderator." Applegate was able to present evidence and argument at the hearing. The panel recommended that the discharge was proper but suggested that the Department revise its manual "to clarify the length of time between suspensions" and "take into consideration the judicial process in its totality" prior to taking final action. In February 2000, the Secretary concurred with the panel's finding that Applegate violated section 8—3(C)(4) of the manual and was appropriately discharged.

In March 2000, Applegate filed a complaint for administrative review in the circuit court of Sangamon County. In May 2000, defendants filed a motion to dismiss for lack of subject-matter jurisdiction because the Administrative Review Law (735 ILCS 5/3—101 through 3—113 (West 2000)) does not apply to the Department. In July 2000, Applegate filed an amended complaint, seeking judicial review of his termination by common-law writ of *certiorari*. In August 2000, defendants filed a motion to dismiss, contending that *certiorari* is improper and would implicate sovereign immunity. In October 2000, Judge Thomas R. Appleton allowed defendants' motion to dismiss, determining that *certiorari* was improper without a formal record to review or any standards against which to measure the Secretary's decision. Judge Appleton granted Applegate leave to file an amended complaint for declaratory judgment.

In November 2000, Applegate filed a two-count second-amended complaint, seeking declaratory judgment and judicial review by writ of *certiorari*. In January 2001, the case was reassigned to Judge Robert J. Eggers. Defendants filed a motion to dismiss. In February 2001, Judge Eggers granted Applegate leave to file an amended complaint including a count for writ of *certiorari*. In April 2001, the circuit court held an evidentiary hearing, to which defendants objected and in which they refused to participate. William Harris, Applegate's former attorney, described Applegate's Christian County DUI case and the grievance proceedings before the hearing panel. Applegate next testified on his own behalf. Finally, Jean Klauber, a labor license specialist for the Department, testified as an adverse witness that he served as review moderator in Applegate's case. To Klauber's knowledge, no report of proceedings or electronic recording had ever been ordered by the moderator in a final panel hearing for technical employees.

In June 2001, the circuit court issued its final order, determining that Applegate could proceed by seeking a declaratory judgment and a writ of *certiorari*. The circuit court ruled that Applegate's termination was wrongful because he did not have the requisite two summary suspensions after one was later rescinded. The circuit court held that Applegate was entitled to be reinstated with back pay. Finally, the circuit court denied Applegate's request for attorney fees because the action was not filed under the Administrative Procedure Act. This appeal and cross-appeal followed.

## II. ANALYSIS

### A. Sovereign Immunity

■ The State first argues that sovereign immunity applies because Applegate's claim is essentially for breach of contract against the

State. The State contends that the circuit court lacks subject-matter jurisdiction over Applegate's claim, which should have been brought in the Court of Claims instead. We disagree.

First, Applegate sought declaratory relief to invalidate the Department's rule of not allowing a record of the final level grievance proceedings. Sovereign immunity does not bar a circuit court action seeking declaratory judgment to invalidate an administrative rule and recover attorney fees under section 10—55(c) of the Administrative Procedure Act (5 ILCS 100/10—55(c) (West 1998)). See *Ackerman v. Department of Public Aid*, 128 Ill. App. 3d 982, 984, 471 N.E.2d 931, 933 (1984). Applegate also sought judicial review of his termination. Sovereign immunity does not bar a party from seeking judicial review of an agency's action by common-law writ of *certiorari*. *Moline Tool Co. v. Department of Revenue*, 410 Ill. 35, 38, 101 N.E.2d 71, 73 (1951).

## B. Availability of Review by *Certiorari*

The State next contends that the circuit court should not have reviewed the Secretary's decision under a common-law writ of *certiorari*. We disagree.

■A common-law writ of *certiorari* is a general method for obtaining circuit court review of administrative actions when the act conferring power on an agency does not expressly adopt the Administrative Review Law and provides for no other form of review. *Alicea v. Snyder*, 321 Ill. App. 3d 248, 253, 748 N.E.2d 285, 290 (2001).

■ In this case, the circuit court properly reviewed the Secretary's decision pursuant to a writ of *certiorari*. The Secretary exercised quasi-judicial power, which is reviewable by *certiorari*, because he adjudicated facts and individual rights. See *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 288 Ill. App. 3d 701, 711, 681 N.E.2d 998, 1005 (1997). The circuit court could review the correctness of the agency's decision pursuant to *certiorari* because the standards of review under a common-law writ of *certiorari* are now essentially the same as those under the Administrative Review Law. See *Hanrahan v. Williams*, 174 Ill. 2d 268, 272, 673 N.E.2d 251, 253-54 (1996). Meaningful objective standards existed by which the circuit court could review the Secretary's exercise of discretion because the personnel policies manual requires "just cause." Therefore, the Secretary's decision to terminate Applegate was not committed to his "complete discretion." *Hanrahan*, 174 Ill. 2d at 276, 673 N.E.2d at 255.

Finally, the circuit court did not err in conducting an evidentiary hearing regarding the Cumberland County and Christian County dispositions of Applegate's summary suspensions and whether Apple-

gate was able to record the grievance hearing. Nothing suggests that the circuit court relied on anything outside of the administrative record in determining, as a matter of law, that Applegate was wrongfully terminated.

## C. Cause for Discharge

The State asserts that the circuit court erred in failing to defer to the Secretary's interpretation of the Department's personnel policies manual. We agree.

■ Review of an administrative agency's decision regarding discharge for cause involves a two-step process. *Grames v. Illinois State Police*, 254 Ill. App. 3d 191, 204, 625 N.E.2d 945, 956 (1993). A reviewing court first must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. *Grames*, 254 Ill. App. 3d at 204, 625 N.E.2d at 956. The court must then determine whether the agency's factual findings provide a sufficient basis for concluding "cause" for discharge exists. *Grames*, 254 Ill. App. 3d at 204-05, 625 N.E.2d at 956.

We give considerable deference to an agency's determination of "cause" for discharge because the agency is in the best position to determine the effect of an employee's conduct on its operations. *Merrifield v. Illinois State Police Merit Board*, 294 Ill. App. 3d 520, 530, 691 N.E.2d 191, 199 (1997); see also *Ehlers v. Jackson County Sheriff's Merit Comm'n*, 183 Ill. 2d 83, 89, 697 N.E.2d 717, 721 (1998) (a reviewing court shall respect an agency's finding of cause for discharge). A reviewing court will not decide whether a less stringent punishment is appropriate and will overturn the agency's decision as to cause only if it is arbitrary and unreasonable or unrelated to the requirements of service. *Merrifield*, 294 Ill. App. 3d at 530, 691 N.E.2d at 199.

■ "Cause" has been judicially defined as " 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.' " *Grames*, 254 Ill. App. 3d at 205, 625 N.E.2d at 956, quoting *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n*, 85 Ill. 2d 547, 551, 426 N.E.2d 885, 887 (1981).

In determining that a rescinded summary suspension could not provide grounds for termination, the circuit court relied on *People v. Focia*, 287 Ill. App. 3d 767, 769, 679 N.E.2d 121, 123 (1997) (rescission of summary suspension undoes the suspension if defendant obtains a hearing before it takes place), and *People v. Eidel*, 319 Ill. App. 3d 496, 504, 745 N.E.2d 736, 744 (2001) ("rescission undoes the administra-

tive summary suspension, at least prospectively"). However, the appellate court in *Focia* held that a rescission does not retroactively reinstate a driver's license. *Focia*, 287 Ill. App. 3d at 769, 679 N.E.2d at 123. The appellate court reversed the dismissal of a charge of driving while license suspended because the defendant's suspension remained in effect until rescinded. *Focia*, 287 Ill. App. 3d at 769, 679 N.E.2d at 123. In contrast, vacatur restores the status quo *ante*, as though a judgment had never been entered. *Eidel*, 319 Ill. App. 3d at 504, 745 N.E.2d at 744.

■ We defer to the Secretary's determination of the effect on the Department's operations of the two rescinded summary suspensions that Applegate served. Although Applegate contends that the 1999 summary suspension was his first, he partially served a summary suspension in 1992 and opted to take an unpaid leave of absence, missing six weeks of work. Although the 1992 summary suspension was later rescinded, that rescission applied only prospectively under *Focia*. Applegate's driver's license, therefore, was in fact suspended in 1992 until the suspension was rescinded. When Applegate began serving a summary suspension in May 1999, he had his second driver's license suspension while employed by the Department. Therefore, the Secretary's determination that cause for Applegate's discharge existed is not arbitrary and unreasonable or unrelated to the requirements of his service.

## D. Administrative Procedure Act

■ As a ground for affirming the circuit court's order and reversing the Department's decision, Applegate cites the Department's failure to follow section 10—35(b) of the Administrative Procedure Act (5 ILCS 100/10—35(b) (West 1998)). Applegate argues a record of his grievance hearing was required because the hearing was a "contested case" as defined in section 1—30 of the Administrative Procedure Act (5 ILCS 100/1—30 (West 1998) ("an adjudicatory proceeding *** in which the individual legal rights, duties, or privileges of a party are required by law to be determined by an agency only after an opportunity for a hearing")). Applegate asserts the Department's personnel policies manual required a hearing and had the force and effect of law. We disagree.

The contested-case provisions of the Administrative Procedure Act did not apply because no opportunity for a hearing was required by law in this case. Applegate was a technical employee exempt from the personnel code. Only the Department's personnel policies manual required a three-member panel to hear a grievance at the final level. We recognize properly promulgated administrative regulations have

the force and effect of law. *Craftmasters, Inc. v. Department of Revenue*, 269 Ill. App. 3d 934, 940-41, 647 N.E.2d 607, 611 (1995). However, the Department's personnel policies manual concerned only internal management and was not a binding rule or regulation adopted in compliance with the Administrative Procedure Act and codified in the Illinois Administrative Code. See *Kaszynski v. Department of Public Aid*, 274 Ill. App. 3d 38, 45, 653 N.E.2d 1330, 1335 (1995) (agency is not bound by statements in internal manual not adopted in compliance with the Administrative Procedure Act); 5 ILCS 100/1—70 (West 1998) (defining "rule" for purposes of Administrative Procedure Act to exclude agency statements concerning only the agency's internal management and not affecting private rights or procedures available to persons or entities outside the agency). Therefore, the Administrative Procedure Act did not require the Department to make a record of Applegate's grievance hearing.

### E. Attorney Fees

In his cross-appeal, Applegate asserts the circuit court erred in denying his request for attorney fees because he invalidated an "administrative rule" in the Department's personnel policies manual. Applegate contends the Department's procedural rules are invalid because they do not allow for a record of the grievance hearing.

■ Applegate is not entitled to attorney fees because he has not had an administrative rule invalidated by any court in this case. This court has rejected Applegate's Administrative Procedure Act claim regarding the record of his grievance hearing. The circuit court did not rule in Applegate's favor in his challenge to the Department's grievance hearing procedures. Therefore, the circuit court did not err in denying Applegate's request for attorney fees.

### III. CONCLUSION

Because the circuit court erred in concluding Applegate was wrongfully terminated, we reverse the part of the circuit court's judgment entitling Applegate to be reinstated with back pay and ruling his termination was wrongful, and we reinstate the Secretary's decision. We affirm the circuit court's denial of Applegate's request for attorney fees.

Affirmed in part and reversed in part; Secretary's decision reinstated.

COOK, J., concurs.

PRESIDING JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I respectfully concur in part and dissent in part. I agree that the circuit court correctly reviewed the Secretary's decision under a common-law writ of *certiorari*. However, I disagree with the standard of review applied by the majority and the result reached by the majority. Here, the standard of review is not the manifest weight of the evidence because there are no issues of fact. The standard for review of the *certiorari* action is *de novo*. *Callahan v. Department of State Police*, 223 Ill. App. 3d 1081, 1085, 586 N.E.2d 381, 384 (1991). Moreover, the Secretary's decisions on questions of law are not binding on this court. *Village of Downers Grove v. Illinois State Labor Relations Board*, 221 Ill. App. 3d 47, 53, 581 N.E.2d 824, 828 (1991); see also *Richard's Tire Co. v. Zehnder*, 295 Ill. App. 3d 48, 56, 692 N.E.2d 360, 366 (1998).

Applegate was clearly discharged because he received two statutory summary suspensions. The grievance review panel's recommendation, in which the Secretary concurred, stated:

"Based on Order 3—1, Chapter 8—C, of IDOT's Personnel Policy Manual, we find that the discharge was proper in accordance to the above provisions. However[,] we, the panel, find the existing provisions of the aforementioned Chapter 8 need to be revised to clarify the length of time between suspensions and revocations of driver's license and that before the Department takes final action, [it] should take into consideration the judicial process in its totality."

The panel and the Secretary clearly recognized the fact that Applegate's discharge ignored the judicial process, in direct contradiction of the Illinois Department of Transportation's personnel policies manual. That manual recognizes the Illinois Vehicle Code (625 ILCS 5/1—100 *et seq.* (West 1998)) and the Secretary of State's rules and regulations governing statutory summary suspensions. The policy at issue here is in fact entitled "Statutory Summary Driver's License Suspension" and permits first offenders a 90-day unpaid leave for the term of the statutory summary suspension. The policy also provides that a second suspension results in discharge. However, nowhere in the manual is "first offense" or "statutory summary suspension" defined. Since the Secretary has recognized the Secretary of State's process set forth in the Illinois Vehicle Code, it is bound by its definitions.

Applegate, at the time of his initial discharge, was actually a first offender because his first suspension had been rescinded:

"For the purposes of interpreting Sections 6—206.1 and 6—208.1 of this Code, 'first offender' shall mean any person who has not had a previous conviction or court[-]assigned supervision for violat-

ing Section 11—501, or a similar provision of a local ordinance, or a conviction in any other state for a violation of driving while under the influence or a similar offense where the cause of action is the same or substantially similar to this Code or any person who has not had a driver's license suspension for violating Section 11—501.1 within 5 years prior to the date of the current offense, except in cases where the driver submitted to chemical testing ***." 625 ILCS 5/11—500 (West 2000).

See also *People v. Eidel*, 319 Ill. App. 3d 496, 504, 745 N.E.2d 736, 744 (2001), citing *People v. Focia*, 287 Ill. App. 3d 767, 769, 679 N.E.2d 121, 123 (1997) (the rescission of the summary suspension undoes the administrative summary suspension, at least prospectively). Applegate was, therefore, also entitled to take a 90-day unpaid leave and was not subject to discharge for cause based on two suspensions. To hold otherwise would invalidate the underlying judicial proceeding that rescinded the statutory summary driver's license suspension and dismissed the DUI. As a matter of law, Applegate's discharge was wrong.

While this court recognizes the employer's need for its employees to possess a driver's license, this court also recognizes the need for the Secretary to follow its own manual, the laws of this state, and the rulings of our courts. For these reasons, I would affirm the circuit court and reverse the ruling of the Secretary.