Joseph DeTOMASO, Plaintiff–Appellant,

v.

Kenneth McGINNIS, Director, Illinois Department of Corrections, et al., Defendants–Appellees.

No. 91–1976.

United States Court of Appeals, Seventh Circuit.

Submitted May 26, 1992.

Decided July 8, 1992.

**212**

Richard P. Beem, Leydig, Voit & Mayer, Chicago, Ill., for plaintiff-appellant.

Before EASTERBROOK and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Illinois convicted Joseph DeTomaso of burglary and deceptive practices. Approximately two years before he was to be released on parole, DeTomaso asked for transfer to a "community correctional center," a prison for persons who are locked up at night but allowed to work during the day (hence the appellation "work release"). The warden, and, after multiple levels of administrative review, the director of the Department of Corrections, denied DeTomaso's plenitudinous requests, citing his criminal history. He filed this suit under 42 U.S.C. § 1983, contending that inmates with worse records than his have been allowed to participate in work release. He demanded both transfer to a community correctional center and damages for the delay. The district court denied leave to proceed *in forma pauperis* and dismissed the suit, with prejudice, under 28 U.S.C. § 1915(d). DeTomaso has been paroled, but because he seeks damages the case is not moot. We appointed counsel to assist DeTomaso on appeal. Although counsel performed yeoman service, they did not uncover any basis on which to upset the order.

Fourteen years ago we remanded a case so that a district judge could decide whether the statutes, regulations, and practices relating to work release in Illinois created a liberty or property interest. *Durso v. Rowe*, 579 F.2d 1365 (7th Cir.1978). The issue remained unresolved until recently, when *Joihner v. McEvers*, 898 F.2d 569 (7th Cir.1990), concluded that the opportunity to be assigned to a work camp in Illinois (a cousin to work release) creates neither a liberty nor a property interest, so that the due process clause of the fourteenth amendment does not apply. *Joihner* recently won the approbation of the full court. *Wallace v. Robinson*, 940 F.2d 243, 246 (7th Cir.1991) (in banc). These cases apply *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), which hold that prisoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system. Community correctional centers are low security institutions but still prisons, and inmates have no more claim to be sent there than they have to avoid commitment to maximum-security penitentiaries.

A state may give inmates more than the Constitution demands, creating liberty or property through rules. But as we held in *Wallace*, following *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 459–63, 109 S.Ct. 1904, 1907–10, 104 L.Ed.2d 506 (1989), only a rule creating entitlements establishes such an interest. Unless the state decrees that certain facts lead to specific consequences, it has not created liberty or property. *Joihner* concluded, and *Wallace* reiterated, that Ill. Rev.Stat. ch. 38 ¶ 1003–12–1, which calls on prison officials to afford work opportunities for their charges, is not such a rule. So too with ¶ 1003–13–2, which says that the prison system "may" release inmates for limited periods if the director is satisfied that release "would not cause undue risk to the public". An option is not a command. This statute gives the director a power and not a duty.

■ What, then, of regulations? *Joihner* addresses a bulletin governing work and road camps. Community correctional centers come under a different heading, in 20 Ill. Admin. Code Part 455. Section 455.30(a) sets out three eligibility requirements. Section 455.30(b) adds eight more for placement as a "regular resident". Section 455.30(a) makes murderers, kidnapers, sex offenders, and big-time drug dealers ineligible, and § 455.30(b) reads in full:

> For pre-release placement as a regular resident, the committed person must:
>
> 1) Have no more than 2 years and no less than 2 months remaining prior to his release date.
>
> 2) Be in "A" grade (20 Ill.Adm.Code 504.130).
>
> 3) Have a designated security classification of minimum with supervision or minimum.
>
> 4) Have no outstanding warrants or detainers against him.
>
> 5) Have no acute medical or dental problems requiring resolution prior to a transfer.
>
> 6) Receive a positive assessment of risk and needs.
>
> 7) Have no incidents of escape or escape attempts within the last five years.
>
> 8) Not have received disciplinary action resulting in confinement in segregation or loss of good time within the last 45 days prior to his application for pre-release placement.

DeTomaso tells us that he satisfies all of these requirements, and records generated by the prison system itself support this conclusion. What more is necessary?, he asks.

Plenty. The regulation states necessary but not sufficient conditions for work release. DeTomaso is "eligible" to be President of the United States if he is "a natural born Citizen ... [who has] attained to the Age of thirty five Years, and been fourteen Years a Resident within the United States." Art. II § 1 cl. 5. A 35–year–old native does not have a property interest in the presidency. Many more prisoners are eligible for work release than there are places in community correctional centers.

Prison officials must choose, and no rule governs the exercise of their discretion. Freedom to choose—with nary a clue about how that discretion must be exercised—means that the rules create neither liberty nor property.

■ Regulations need not eliminate choice to create liberty or property; they may do so by greatly reducing its domain. *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *Smith v. Shettle,* 946 F.2d 1250 (7th Cir. 1991). Almost any regulatory system leaves escape hatches. To treat these as negating liberty or property interests means that we should give up the search; governance is not mechanical. The extent of discretion spans orders of magnitude, however, and Part 455 does so little to prescribe outcomes that it cannot be understood as creating a "legitimate claim of entitlement." See *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Thompson,* 490 U.S. at 462–63, 109 S.Ct. at 1909–10.

■ Although a district judge has discretion to deny leave to proceed *in forma pauperis* and to dismiss a claim without prejudice, see *Denton v. Hernandez,* —— U.S. ——, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), a dismissal with prejudice is proper only when the action is frivolous or malicious. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). *Wallace* and *Joihner,* in conjunction with Part 455, show that any effort to find a liberty or property interest in the prospect of work release is frivolous. DeTomaso's lawyers contend, however, that he should be allowed to proceed on an equal-protection theory—that prison officials acted "arbitrarily" in allowing felons with records worse than his to enjoy work release while keeping him cooped up.

Because DeTomaso does not contend that race, religion, and the like were at work, it is hard to see this as a claim under the equal protection clause. Protection against "arbitrary" action is a form of substantive due process, see *Superintendent of Walpole v. Hill,* 472 U.S. 445, 105 S.Ct.

2768, 86 L.Ed.2d 356 (1985), and the holding that work release is not liberty or property knocks out both procedural and substantive components of due process. To say that there is no liberty or property interest is precisely to say that states are free to decide randomly, even whimsically—just not perversely, on the basis of characteristics that the Constitution places off limits.

Illinois has a rational explanation for caution in awarding work release status: slots are few, potential risks high. Cf. *Wade v. United States*, —— U.S. ——, ——, 112 S.Ct. 1840, 1844, 118 L.Ed.2d 524 (1992). For both due process and equal protection purposes the judgment and sentence is the only justification the state need offer for retaining custody. We would not give five minutes to a claim that DeTomaso is entitled to relief because his penalty, at five years, exceeds the term imposed on some murderers, or that he has been sent to a maximum-security prison while some goons are in medium security. No more, then, is there a problem here. As we said in another case in which a prisoner contended that he was entitled to work release because the prison had accorded that status to persons nastier than he: "Federal courts are not boards of appeal in prison administration. Error in carrying out a lawful state program does not violate the Constitution." *DiAngelo v. Illinois Department of Public Aid*, 891 F.2d 1260, 1263 (7th Cir.1989).

DeTomaso attached to his appellate brief an affidavit stating:

If further proceedings are allowed in this matter, I intend to prove that the reason for the defendants' discrimination against me was retaliation for asserting my legal rights. I had spent eight hours per day, five days per week for two years in the prison's law library, researching causes of action against the Illinois Department of Corrections. I filed numerous complaints and grievances on my own behalf, as well as two other suits against prison officials and state police.... I also helped many other inmates to assert their legal rights, including filing suits against prison officials and filing grievances within the prison system. I also wrote articles about legal issues for the prison newspaper.

Two years of nonstop browsing at the Sheridan Correctional Center's library show how times have changed since *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Because the Constitution protects an inmate's access to the courts, prison officials may not retaliate against those who seek or obtain such access—whether the retaliation takes the form of withholding property or privileges does not matter. See *Haymes v. Montanye*, 547 F.2d 188 (2d Cir.1976). But DeTomaso's papers in the district court are well-written and thorough (two years at the carrels paid off). And they contain not a whiff of a claim based on retaliation. An affidavit attached to a brief is not part of the record, and we order it stricken. *Branion v. Gramly*, 855 F.2d 1256, 1260–61 (7th Cir.1988). The district court decided the case correctly on the papers that were before it.

AFFIRMED.