(No. 78357.—

# HOMER E. HANRAHAN, Appellee, v. JAMES K. WILLIAMS et al., Appellants.

*Opinion filed September 19, 1996.—Rehearing denied December 2, 1996.*

Roland W. Burris and James E. Ryan, Attorneys General, of Springfield (Rosalyn B. Kaplan and Barbara A. Preiner, Solicitors General, and Daniel N. Malato, Assistant Attorney General, of Chicago, of counsel), for appellants.

Locke E. Bowman and Kathleen M. Banar, of Chicago, and Ross Brooks, Conor McAuliffe and Maurin McBroom, law students, for appellee.

Cynthia Grant Bowman, Amanda Clayman and Martha Conlin, of Chicago, for *amici curiae* American Civil Liberties Union of Illinois *et al.*

JUSTICE MILLER delivered the opinion of the court:

Plaintiff, Homer E. Hanrahan, filed a second-amended complaint in the circuit court of Lee County against defendants, the Illinois Prisoner Review Board and its individual members (collectively, the Board), challenging the denial of his parole. In count III, Hanra-

han sought the issuance of a common law writ of *certiorari* to obtain review of the Board's June 1993 decision to deny him parole. The circuit court dismissed count III as "insufficient in law," and found no just reason for delaying appeal of the order (155 Ill. 2d R. 304(a)). The appellate court reversed the dismissal. 267 Ill. App. 3d 735. We granted the Board's petition for leave to appeal (155 Ill. 2d R. 315), and allowed *amici curiae* to join in filing a brief (155 Ill. 2d R. 345).

## BACKGROUND

In 1976, a jury found Hanrahan guilty of murder, aggravated kidnapping, aggravated battery, and conspiracy. He was sentenced to serve concurrent indeterminate prison terms of 50 to 100 years for murder, 20 to 40 years for aggravated kidnapping, and 3 to 10 years for aggravated battery. His convictions and sentences were affirmed on direct review. *People v. Hanrahan*, 64 Ill. App. 3d 207 (1978). Hanrahan is currently incarcerated at the Dixon Correctional Center, having served approximately 20 years of his sentences. He has been eligible for parole since 1983.

In June 1993, the Board conducted parole hearings, and ultimately denied Hanrahan parole. Thereafter, Hanrahan filed a second amended complaint consisting of three counts. In count III, Hanrahan requested that the circuit court issue a common law writ of *certiorari* to review the Board's June 1993 decision to deny him parole. Hanrahan alleged in part that the decision to deny him parole was "arbitrary and capricious, an abuse of discretion, contrary to law and against the manifest weight of the evidence." In his prayer for relief, Hanrahan requested that the circuit court reverse the Board's decision.

After granting Hanrahan leave to file his second-amended complaint, the circuit court granted the Board's oral motion to dismiss count III of the com-

plaint. The circuit court ruled that count III was "insufficient in law," and found no just reason for delaying appeal of the order. 155 Ill. 2d R. 304(a). Hanrahan appealed the dismissal.

The appellate court reversed. 267 Ill. App. 3d 735. The appellate court first stated that the Administrative Review Law is not applicable to review of the Board's parole-release decisions. The appellate court next noted that a writ of *mandamus* would not afford Hanrahan the type of relief he sought. The appellate court further found unpersuasive the Board's argument that, because of its discretionary nature and the minimal record resulting from the action, the parole-release decision is not reviewable by issuance of a common law writ of *certiorari*. To illustrate the feasibility of judicial review of parole-release decisions, the appellate court pointed to federal *habeas corpus* proceedings in which federal courts have reviewed the merits of parole-release decisions. See *Zannino v. Arnold*, 531 F.2d 687 (3d Cir. 1976) (federal prisoner challenged federal parole board's decision to deny parole and sought relief under 28 U.S.C. § 2241); *United States ex rel. O'Connor v. MacDonald*, 449 F. Supp. 291 (N.D. Ill. 1978) (state prisoner challenged Illinois parole board's decision to deny parole and sought relief under 28 U.S.C. § 2254). Noting that the extent of review conducted by a federal court in *habeas corpus* proceedings is similar to that under a common law writ of *certiorari*, the appellate court found that common law writs of *certiorari* may issue to review parole-release decisions in Illinois.

We granted the Board's petition for leave to appeal (155 Ill. 2d R. 315), and have allowed the American Civil Liberties Union of Illinois, Chicago Conference of Black Lawyers, Illinois Attorneys for Criminal Justice, Illinois Public Defender Association, National Association of Criminal Defense Lawyers, Northwestern University

Legal Clinic, and the office of the State Appellate Defender to file a brief, collectively, as friends of the court (155 Ill. 2d R. 345).

## DISCUSSION

Illinois inmates who are denied parole may seek several remedies, including a writ of *mandamus* in state court and a writ of *habeas corpus* in federal court. In the parole context, a writ of *mandamus* may be used to compel the Board to exercise its discretion, but may not be used to compel the Board to exercise its discretion in a certain manner. See, *e.g.*, *People ex rel. Abner v. Kinney*, 30 Ill. 2d 201 (1964) (*mandamus* used to compel Board to provide parole-eligible inmate with a parole hearing). In addition, federal courts will grant a writ of *habeas corpus* if a petitioner demonstrates that his custody is in violation of the Constitution or laws of the United States. *Lilly v. Gilmore*, 988 F.2d 783, 789 (7th Cir. 1993); *Escobar v. O'Leary*, 943 F.2d 711, 720 (7th Cir. 1991); see also *United States ex rel. Arnold v. Illinois Prisoner Review Board*, 803 F. Supp. 222 (N.D. Ill. 1992) (Illinois inmate petitioned for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 because of claimed equal protection violation). Hanrahan did not request either *mandamus* or *habeas corpus* relief in count III of his second-amended complaint. Instead, Hanrahan sought the issuance of a common law writ of *certiorari*.

A common law writ of *certiorari* is a general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review. *Smith v. Department of Public Aid*, 67 Ill. 2d 529, 541 (1977). The standards of review under a common law writ of *certiorari* are essentially the same as those under the Administrative Review Law. *Smith*, 67 Ill. 2d at 541-42. Under the Administrative Review Law, courts generally do not

interfere with an agency's discretionary authority unless the exercise of that discretion is arbitrary and capricious (*Dorfman v. Gerber*, 29 Ill. 2d 191, 196 (1963)) or the agency action is against the manifest weight of the evidence (*Murdy v. Edgar*, 103 Ill. 2d 384, 391 (1984)). In the instant case, the parole-release statutory scheme fails to adopt the Administrative Review Law or provide for another form of review. Hanrahan thus contends that circuit courts may issue common law writs of *certiorari* to review the merits of the Board's parole-release decisions.

Whether, and to what extent, action by an administrative agency is reviewable is a question of statutory interpretation. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 497 (1988) (whether IHDA action is reviewable is a question of statutory interpretation). In this case, we must determine whether the legislature intended for the merits of the Board's parole-release decision to be reviewable by courts, an issue of first impression in Illinois.

While most agency actions are presumed reviewable, no presumption arises if there is a statutory bar to review or if statutory language commits the agency decision to unreviewable agency discretion. *Greer*, 122 Ill. 2d at 497. Factors to consider in determining whether statutory language precludes judicial review include the statute's "express language, the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Greer*, 122 Ill. 2d at 497-98. "Of particular importance is whether the statute contains standards, goals, or criteria by which a court may evaluate agency action." *Greer*, 122 Ill. 2d at 498, citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 28 L. Ed. 2d 136, 150, 91 S. Ct. 814, 820 (1971). Accordingly, judicial review is precluded if "the statute is drawn so that a

court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 84 L. Ed. 2d 714, 723, 105 S. Ct. 1649, 1655 (1985).

The Illinois Prisoner Review Board is an administrative agency created by the legislature. See *People ex rel. Abner v. Kinney*, 30 Ill. 2d 201, 205 (1964) (Parole and Pardon Board "sits as an administrative body with the power to make final decisions in parole matters"). The members of the Board are appointed by the Governor with the advice and consent of the Senate. 730 ILCS 5/3—3—1(b) (West 1992). To be eligible for appointment, a person must have five years' experience in the field of penology, corrections work, law enforcement, sociology, law, education, social work, medicine, psychology, other behavioral sciences, or a combination of these fields. 730 ILCS 5/3—3—1(b) (West 1992).

One of the Board's duties is to determine whether an eligible inmate should be granted or denied parole. 730 ILCS 5/3—3—2(a)(1), (a)(2) (West 1992); see also 730 ILCS 5/3—3—1(a)(1) (West 1992) (Board is "paroling authority" for persons sentenced under law in effect prior to effective date of the determinate sentencing act of 1977). "Parole" is defined as "the conditional and revocable release of a committed person under the supervision of a parole officer." 730 ILCS 5/3—1—2(k) (West 1992). In making parole-release decisions, the Board must consider certain material and reports, including statements from the inmate, the State's Attorney and the victim. 730 ILCS 5/3—3—4(d) (West 1992). The Board must render the parole-release decision within a reasonable time after hearing and must state the basis for its decision. 730 ILCS 5/3—3—5(f) (West 1992).

The legislature has also authorized the Board to promulgate its own rules regarding the conduct of its work and the exercise of its discretion. 730 ILCS 5/3—

3—2(d), 3—3—5(h) (West 1992). The rules adopted by the Board (20 Ill. Adm. Code §§ 1610.10 through 1610.180 (1992-93)) provide that "[t]he Board grants parole as an exercise of grace and executive discretion as limited or defined by the Illinois General Assembly in duly adopted legislation" and that "[t]he parole release decision is a subjective determination based on available relevant information." 20 Ill. Adm. Code §§ 1610.50(a), (b) (1992-93). The rules provide lists of factors that may be considered by the Board in determining whether to grant or deny parole. 20 Ill. Adm. Code § 1610.50(b) (1992-93) (listing factors relevant to inmate's prior history, committing offense, institutional adjustment, and release plans). The rules, however, specifically state that the parole-release decision is not limited to the consideration of only those factors listed. 20 Ill. Adm. Code § 1610.50(b) (1992-93).

The legislature has set forth criteria under which the Board must deny parole in section 3—3—5(c) of the Unified Code of Corrections, which reads:

"The Board shall not parole a person eligible for parole if it determines that:

(1) there is· a substantial risk that he will not conform to reasonable conditions of parole; or

(2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or

(3) his release would have a substantially adverse effect on institutional discipline." 730 ILCS 5/3—3—5(c) (West 1992).

The rules set forth the same criteria for determining when the Board must deny parole. 20 Ill. Adm. Code § 1610.50(a) (1992-93). We note that the council commentary of section 3—3—5(c) states that "[t]he Board should state one or more of the reasons listed in [section 3—3—5(c)] as the basis for its decision denying parole ***. Additional reasons may also be stated." 730 ILCS Ann. 5/3—3—5, Council Commentary, at 56 (Smith-Hurd 1992).

Hanrahan contends that the Board's discretion is guided by statutory criteria, and that the rules set forth well-defined limits to the Board's discretion. Hanrahan concludes that, because the parole-release statutory scheme "contains standards, goals, or criteria by which a court may evaluate agency action" (*Greer*, 122 Ill. 2d at 498), judicial review by the issuance of a common law writ of *certiorari* should be available.

We disagree. The statutory provisions provide criteria under which the Board must deny parole. The statutory provisions do not, however, state when the Board must grant parole. *Heirens v. Mizell*, 729 F.2d 449, 465 (7th Cir. 1984) (neither statutory scheme nor rules provide for circumstances under which the Board would be required to grant parole). The Board is free to consider any available relevant information to make its determination to grant or deny parole. 20 Ill. Adm. Code § 1610.50(b) (1992-93). Further, the rules expressly provide that parole is granted "as an exercise of grace and executive discretion" (20 Ill. Adm. Code § 1610.50(a) (1992-93)), and Illinois courts have consistently held that parole is not a right (*People v. Hawkins*, 54 Ill. 2d 247, 252 (1973); *People ex rel. Jones v. Brantley*, 45 Ill. 2d 335, 337-38 (1970); *People ex rel. Castle v. Spivey*, 10 Ill. 2d 586, 594-95 (1957); *People ex rel. Richardson v. Ragen*, 400 Ill. 191, 201 (1948); *People v. Nowak*, 387 Ill. 11, 14 (1944)).

We believe that Illinois' statutory criteria and the Board's rules do not provide standards for release on parole sufficiently objective to allow a court to evaluate the Board's decision to deny parole. We thus conclude that the legislature, in drafting the statutory language, intended the Board to have complete discretion in determining whether to grant parole when the denial of parole is not mandated by statute.

We recognize that our interpretation of section

3—3—5(c) of the Unified Code of Corrections differs from the United States Court of Appeals for the Seventh Circuit's interpretation of the same statutory language in *United States ex rel. Scott v. Illinois Parole & Pardon Board*, 669 F.2d 1185 (7th Cir. 1982). While the issue presented in *Scott* differed from the issue presented here, the *Scott* court, in its analysis, concluded that section 3—3—5(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—5(c) (Board "shall not" grant parole "if" one of three statutory criteria is found)) requires "the Board to release an inmate who is eligible for parole unless one of the specified reasons for denial are found to exist." *Scott*, 669 F.2d at 1189. As to its interpretation, however, the *Scott* court further observed:

> "[B]y stating its rule in the negative Illinois has left open the possibility that its statute can also be reasonably read as not creating an expectancy of release on parole. It can be read as merely a statement by the Illinois legislature as to when the Board must deny parole, leaving the Board free in the absence of those conditions to exercise its own discretion in deciding whether or not parole should be granted. Under this construction, the statute would not create a legitimate expectation of release and due process considerations would not apply." *Scott*, 669 F.2d at 1189.

Our construction of section 3—3—5(c) is consistent with this latter construction mentioned but rejected by the Seventh Circuit in *Scott*. This court is not bound by the Seventh Circuit's interpretation of our statutes. *People v. Kokoraleis*, 132 Ill. 2d 235, 293-94 (1989) ("decisions of lower Federal courts are not conclusive on State courts, except insofar as the decision of the lower Federal court may become the law of the case"); see also *Averhart v. Tutsie*, 618 F.2d 479 (7th Cir. 1980) (where Indiana Supreme Court expressly held that state's parole-release statute created no expectancy of release, the federal court was bound by that interpretation).

Our finding is supported by the general nature of parole-release decisions, which are often based on subjective factors and predictions rather than objective factors. In *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979), the Supreme Court characterized the nature of parole-release determinations as follows:

"The parole-release decision *** depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual. The parole determination, like a prisoner-transfer decision, may be made

'for a variety of reasons and often involve[s] no more than informed predictions as to what would best serve [correctional purposes] or the safety and welfare of the inmate.'" *Greenholtz*, 442 U.S. at 9-10, 60 L. Ed. 2d at 677, 99 S. Ct. at 2105, quoting *Meachum v. Fano*, 427 U.S. 215, 225, 49 L. Ed. 2d 451, 459, 96 S. Ct. 2532, 2538 (1976).

The *Greenholtz* court also stated:

"In parole releases, *** few certainties exist. In each case, the decision differs from the traditional mold of judicial decisionmaking in that the choice involves a synthesis of record facts and personal observation filtered through the experience of the decisionmaker and leading to a predictive judgment as to what is best both for the individual inmate and for the community. *** The entire inquiry is, in a sense, an 'equity' type judgment that cannot always be articulated in traditional findings." *Greenholtz*, 442 U.S. at 8, 60 L. Ed. 2d at 676, 99 S. Ct. at 2104.

We believe that the discussion in *Greenholtz* concerning the general nature of parole is instructive.

Hanrahan argues that the parole-release decision is no different from other administrative agency decisions, reviewable upon the issuance of a common law writ of

*certiorari,* where the agency exercised wide discretion subject to legislative limits. See, *e.g., Stratton v. Wenona Community Unit District No. 1,* 133 Ill. 2d 413 (1990) (school board's decision to expel student for misconduct); *Smith v. Department of Public Aid,* 67 Ill. 2d 529 (1977) (Illinois Department of Public Aid's decision as to entitlement of benefits under food stamp program); *Nowicki v. Evanston Fair Housing Review Board,* 62 Ill. 2d 11 (1975) (Fair Housing Review Board's decision to impose fine after finding violation of ordinance). We believe, however, that the highly subjective and predictive nature of the parole-release decision, along with the fact that there are no standards sufficiently objective to allow a court to evaluate the Board's decision to deny parole other than the statutory criteria mandating denial, sets the parole-release decision apart from other cases.

We further believe that the Board's parole-release decisions more closely resemble those decisions found to be unreviewable in the federal courts pursuant to the Administrative Procedure Act (5 U.S.C. § 701(a)(2) (1994) (precludes judicial review of agency action when "action is committed to agency discretion by law")). See *Lincoln v. Vigil,* 508 U.S. 182, 124 L. Ed. 2d 101, 113 S. Ct. 2024 (1993) (Indian Health Service's decision to discontinue clinical program for Indian children was committed to agency discretion by law and thus not subject to judicial review under APA); *Webster v. Doe,* 486 U.S. 592, 100 L. Ed. 2d 632, 108 S. Ct. 2047 (1988) (CIA Director's decision to discharge employee for national security reasons was committed to agency discretion by law and thus not subject to judicial review under APA); *Heckler v. Chaney,* 470 U.S. 821, 84 L. Ed. 2d 714, 105 S. Ct. 1649 (1985) (Food and Drug Administration's decision not to. take enforcement action was committed to agency discretion by law and thus not subject to judicial review

under APA); *Singh v. Moyer*, 867 F.2d 1035 (7th Cir. 1989) (United States Information Agency's recommendation to deny waiver of two-year foreign residency requirement was committed to agency discretion by law and thus not subject to judicial review under APA).

Hanrahan recognizes the predictive nature of the parole-release decision but contends that it does not shield the merits of the decision from judicial review. Hanrahan compares the predictive nature of the parole-release decision to the predictive nature of the Illinois Secretary of State's decision to restore driving privileges to persons whose licenses have been revoked. Hanrahan points out that the Secretary of State's actions are reviewable in the circuit court. *Murdy v. Edgar*, 103 Ill. 2d 384 (1984). As the Board observes, however, unlike the parole-release statutory scheme, the Illinois Vehicle Code expressly provides for review of the Secretary of State's actions under the Administrative Review Law. 625 ILCS 5/6—212 (West 1994).

Hanrahan next points out that some states provide for judicial review of the merits of parole-release decisions. See *State v. Goulette*, 65 Wis. 2d 207, 222 N.W.2d 622 (1974) (Wisconsin affords judicial review of parole-release decisions by issuance of a common law writ of certiorari); *Wayne County Prosecutor v. Parole Board*, 210 Mich. App. 148, 532 N.W.2d 899 (1995) (Michigan statute provides for judicial review of parole-release decisions). Other states, however, have found that the merits of parole-release decisions are not subject to judicial review. See *Carrion v. New York State Board of Parole*, 620 N.Y.S.2d 420, 210 A.D.2d 403 (1994); *In re Question Concerning State Judicial Review of Parole Denial*, 199 Colo. 463, 610 P.2d 1340 (1980). It is apparent that each state must decide, based on its own statutory scheme, whether the merits of parole-release decisions are reviewable.

Finally, *amici curiae* contend that certain constitutional rights of inmates subject to parole have been violated. Neither party, however, has raised these issues. We therefore do not address them. See *People v. P.H.*, 145 Ill. 2d 209, 234 (1991).

## CONCLUSION

For the reasons set forth above, we find that a common law writ of *certiorari* may not be issued to review the merits of the Board's decision to deny Hanrahan's parole. Because no set of facts could be proved which would entitle Hanrahan to a common law writ of *certiorari*, count III of his second-amended complaint was properly dismissed.

The judgment of the appellate court is reversed, the judgment of the circuit court of Lee County is affirmed, and the cause is remanded for further proceedings.

*Appellate court judgment reversed;*
*circuit court judgment affirmed;*
*cause remanded.*