James **TAYLOR**, Plaintiff–Appellant,

v.

James **EDGAR**, et al., Defendants–
Appellees.

No. 01–1605.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 21, 2002.*

Decided Nov. 25, 2002.

Before BAUER, POSNER, and DIANE
P. WOOD, Circuit Judges.

ORDER

James Taylor is an Illinois inmate whose applications for transfer to minimum-security facilities and work release programs have been repeatedly denied. He sued various state and prison officials under 42 U.S.C. § 1983, alleging due process, equal protection, and ex post facto violations, but lost on summary judgment. He now appeals.

In 1976, Taylor was sentenced to an indeterminate term of 100–200 years for first-degree murder. Prisoners like Taylor with long-term indeterminate sentences are known as "C-number" inmates. He is currently serving in a medium-security facility. Seeking greater opportunities for

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

rehabilitation, and even possible parole, he has periodically applied for transfer to minimum-security facilities and work-release programs within the Illinois prison system, but without success. Prison administrators have cited various reasons for denying his applications, including the severity of his offense, the appropriateness of his current placement, and the long duration remaining until his prospective release date.

Taylor believed that these denials were illegitimate. He alleged that his applications were evaluated under criteria for transfer that were put into place after his incarceration date, in violation of the Constitution's due process and ex post facto clauses. He also alleged that the prison system had an unwritten policy of denying minimum-security and work-release transfers to C-number prisoners, in violation of the Fourteenth Amendment's equal protection clause.

The district court, granting summary judgment for the defendants, reasoned that because prisoners have no liberty interest in placement, there was no violation of due process. The court found that Taylor's transfer requests were processed under the rules in place at the time of his sentencing, and that there was consequently no ex post facto question. The court addressed Taylor's equal protection claim by noting that he had neither alleged nor proven any discrimination based on race, religion, or national origin. Finally, the court stated that the Eleventh Amendment protected the defendant state officers against Taylor's claims for damages.

We review a grant of summary judgment de novo and will affirm if, viewing the facts in the light most favorable to Taylor, no genuine issue of material fact exists and the defendants are entitled to judgment as a matter of law. *See Chavez v. Cady*, 207 F.3d 901, 902 (7th Cir.2000).

Using this standard, we will review each of Taylor's arguments in turn.

■ Taylor first contests the district court's conclusion that he had no liberty interest in a minimum-security or work-release placement, and that due process was therefore not an issue. *See Piggie v. McBride*, 277 F.3d 922, 924 (7th Cir.2002) (requiring due process in prison proceedings where a liberty interest is at stake). It is well established that in the absence of a state rule creating a specific entitlement, prisoners have no liberty interest in placement. *See Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir.2001); *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992). Taylor, however, points to the rules governing minimum-security and work-release placement that were effective at the time of his sentencing, and argues that they create such an entitlement. But those rules establish no more than eligibility for such placement, and eligibility by itself does not confer an entitlement. *Id.* at 213.

■ Taylor also argues that, for a prisoner serving an indeterminate sentence, the denial of favorable placement is tantamount to a denial of the possibility of parole, which depends in part on the prisoner's ability to rehabilitate himself and to prepare for reassimilation into free society. But as with placement, parole entails no liberty interest unless such an interest is created by a state rule or statute. *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 7–8, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Montgomery*, 262 F.3d at 644. In *Hanrahan v. Williams*, 174 Ill.2d 268, 220 Ill.Dec. 339, 673 N.E.2d 251 (1996), the Illinois Supreme court examined the application of the state's parole statute to a prisoner serving a long-term indeterminate sentence, and concluded that the statute leaves discretion entirely in the hands of

the Prisoner Review Board, absent an explicit prohibition of parole. *Id.* at 255; *see* 730 ILCS 5/3-3-5(c) (setting forth conditions that mandate denial of parole). We accordingly held in *Heidelberg v. Ill. Prisoner Review Bd.*, 163 F.3d 1025 (7th Cir. 1998), which again involved a long-term indeterminate sentence, that the Illinois parole statute does not create a legitimate expectation of parole. *Id.* at 1026–27. The relevant portions of the parole statute have remained substantially unchanged since the time of Taylor's sentencing. *See* 730 ILCS 5/3-3-3(a) (retaining the pre–1978 eligibility requirements for pre–1978 prisoners); 730 ILCS 5/3-3-5(c) (retaining the pre–1978 conditions mandating denial of parole). Because the Illinois parole statute does not provide a reasonable expectation of parole, the denial of minimum-security or work-release placement for Taylor does not run afoul of due process.

Raising his ex post facto claim on appeal, Taylor challenges the district court's finding that his applications for transfer were in fact processed under the standards that were in place at the time of his incarceration. He argues that the rationales given for the denial of his requested placements, including "the seriousness of the offense" and "being appropriately placed," became current only after February 1, 1978, when the determinate sentencing law took effect. But these rationales reflect at most a change in administrative policy, not a new law or exercise of delegated legislative authority. *See United States v. Seacott*, 15 F.3d 1380, 1385 (7th Cir.1994); *Prater v. United States Parole Comm'n*, 802 F.2d 948, 954 (7th Cir.1986). In any event, there is nothing new about the authority of prison officials to deny a particular placement, regardless of whether the reasons for doing so are specified in the regulations. Taylor's ex post facto claim therefore fails.

Taylor also challenges the district court's treatment of his equal protection claim. Taylor claimed that the prison system had an unwritten policy of denying minimum-security and work-release placements to C-number inmates. The court found no equal protection claim because Taylor had not alleged discrimination on the basis of a membership in a protected group (or, for that matter, on the basis of assertion of a fundamental right). Taylor is correct that an equal protection claim can be based on membership in a non-protected group, such as C-number inmates, but the treatment in question will be declared unconstitutional only if it has no rational basis, *see United States v. Jester*, 139 F.3d 1168, 1171 (7th Cir.1998), which is the case only if no state of facts could reasonably be conceived to justify the discriminatory treatment, *id.* We do not consider whether a blanket denial of favorable placement to C-number inmates would be upheld under such review, because Taylor has not been able to demonstrate the existence of such a policy. His evidence (chiefly two letters from IDOC Transfer Coordinator Diane Jockisch) demonstrates at most a requirement that C-number inmates receive particular administrative approval for transfer to the Vienna Correctional Center–a policy that would easily survive the rational basis test.

Taylor next challenges the district court's conclusion that his claims for damages against state officers were barred by the Eleventh Amendment. Taylor points out that sovereign immunity does not bar suits challenging the constitutionality of a state official's action. *See Williams*, 851 F.2d at 883. As the above analysis shows, however, Taylor has not been able to maintain any viable constitutional claims, so the reach of sovereign immunity is irrelevant.

We therefore conclude that the district court correctly granted summary judg-

ment. We note, however, that we do not agree with the district court's conclusion that Taylor's lawsuit qualifies as a "strike" under 28 U.S.C. § 1915(g). That status is reserved for cases that are dismissed for frivolousness, maliciousness. or failure to state a claim.

AFFIRMED.