FOURTH DIVISION
February 7, 2008

No. 1-07-0560

| | | |
|---|---|---|
| ROBERT M. BONO, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06 CH 05109 |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, a Municipal | ) | Honorable Peter Flynn, |
| Corporation, THE CHICAGO TRANSIT BOARD, | ) | Judge Presiding. |
| and CAROLE L. BROWN, Chicago Transit Board | ) | |
| Chairman, | ) | |
| | ) | |
| Respondents-Appellees, | ) | |
| | ) | |
| (John Plante, Carlos Campos, Hugh Muller, | ) | |
| Kathleen Herrmann, Michael Bobko, and Roxanne | ) | |
| Galvan, | ) | |
| | ) | |
| Respondents). | ) | |

JUSTICE MURPHY delivered the opinion of the court:

Petitioner, Robert M. Bono, was discharged from his position as a supervisor with respondent, Chicago Transit Authority (CTA), on September 16, 2005, for misconduct regarding improper personal use of the telephone for a call he made to a customer while working. Petitioner requested a "for cause" hearing before respondent Chicago Transit Board (Board) pursuant to section 28 of the Metropolitan Transit Authority Act (Act) (70 ILCS 3605/28 (West 2004)). Following a full hearing on the matter, respondent chairperson of the Board, Carole L.

Brown, issued an ordinance dated February 15, 2006, upholding the termination. Petitioner filed a petition for writ of *certiorari* with the circuit court. Following the dismissal of the additional respondents as unnecessary parties and denial of respondents' motion to dismiss for lack of subject matter jurisdiction, the parties briefed and argued the issue. The trial court upheld the decision of the Board on January 25, 2007. This appeal followed. For the following reasons, we affirm the findings of the Board.

## I. BACKGROUND

On September 15, 2005, petitioner received notice of termination of employment from his supervisor, Steve Kelso. In support of the termination, Kelso cited petitioner's violation of CTA rules (including Rule 7, "Obedience to Rules"; Rule 14, "Personal Conduct"; Rule 24, "Use of Best Judgment"; and Rule 25, "Courtesy"), as a result of an August 25, 2005, telephone call placed while at work. Petitioner invoked his right to a "for cause" hearing before the Board pursuant to section 28 of the Act. A hearing was scheduled for October 19, 2005.

At the hearing, the CTA presented the testimony of three witnesses. Michael Bobko, a criminal investigator from the office of the inspector general for the CTA, testified first. Bobko testified that on August 25, 2005, a complaint was made via the office of the inspector general hotline by a Lisa Johnson. Johnson, an e-mail applicant for a CTA fare card, registered a complaint regarding a call she had received from a CTA employee identifying himself as "Bob." Bobko was assigned to investigate the complaint. After determining that petitioner was the employee assigned the telephone from where the call was made, Bobko contacted Johnson to conduct a telephone interview.

Following his telephone interview of Johnson, Bobko interviewed petitioner at the office of Roxanne Galvan, who was petitioner's supervisor. Galvan was present for the interview as a "prover" of any statements made by petitioner. Petitioner admitted that he had called Johnson, immediately stating that he knew it was poor judgment and it would not happen again. Petitioner stated that he called Johnson because he had seen her name on a customer contact list and that he used to work with someone with the same name either at the Federal Reserve Bank or at the CTA. After learning that Johnson was not his former coworker, petitioner answered Johnson's questions regarding the CTA's Chicago Card and agreed to mail her a brochure, which he subsequently mailed.

Petitioner also admitted that during the conversation, he learned that Johnson was from Minneapolis, Minnesota. Bobko testified that petitioner admitted that he had made a joke during the phone call referencing the town of Moorhead, Minnesota, where his brother and sister-in-law lived. Petitioner denied that it was a joke because it was a sexual reference. However, Bobko testified that when petitioner was pressed about why it was funny, he admitted that it was only humorous as a sexual joke. Petitioner again apologized and stated that he had never made sexual calls from work and would never in the future.

Bobko summarized the findings of his investigation as follows: that the phone used to call Johnson was petitioner's office phone; that Johnson complained of a man named Bob calling her; that Galvan indicated petitioner's job duties did not require calling customers; petitioner had not called any other customers; petitioner's call was personal and social in nature; petitioner had relatives residing in Moorhead, Minnesota; and that the nature of petitioner's reference to

Moorhead, Minnesota, was as a sexual joke. Accordingly, Bobko concluded that petitioner's actions were inappropriate because of the personal use of CTA phones and the improper content of the call. Bobko memorialized this summary in a written report to his supervisor.

Galvan testified next that she was manager of fare media operations and that she had supervisory authority over petitioner at the time of the incident. Galvan testified that petitioner's job duties at the time were overseeing the student permit program and being involved in day-to-day operations in a supervisory role. Galvan stated that it was in the normal course of business for fare media operations personnel to make telephone calls to customers to resolve various issues in their orders. However, Galvan stated that there were no circumstances involving Johnson's order that required phone contact. The CTA was not telemarketing the Chicago Card at that time, but only doing mail marketing of the program.

Galvan testified that she sat in on Bobko's interview of petitioner as a witness and that petitioner appeared nervous. During the interview, petitioner explained that he saw Johnson had ordered a 30-day pass, he thought he knew her, so he called her to talk with her and suggest a Chicago Card. Petitioner explained they had a conversation and he learned that it was not the woman he knew. Galvan testified that after additional questioning from Bobko, petitioner initially stated that he discussed his family from Minnesota, but could not recall the town name. After more questioning, petitioner recalled that the town was Moorhead, Minnesota.

Petitioner also admitted that he joked about the town name Moorhead to Johnson, but said that Bobko's interpretation of that as a sexual reference was out of context. Galvan questioned petitioner about what the joke was. Galvan testified that petitioner seemed surprised

4

by the question and simply deliberately repeated the name of the town to Galvan to explain it.

Galvan testified that she was also present at meetings on September 14 and 15, 2005, with her supervisor, Kelso, petitioner and petitioner's attorney. Kelso had reviewed the investigation report and set the meeting to allow petitioner to present his side of the story. Galvan testified that Kelso presented a recap of the report and his understanding of the incident. Petitioner was apologetic and offered that he meant no harm by the call and would not want to jeopardize his 21 years with the CTA. Petitioner indicated that he was just filling in for someone on the day of the incident and happened upon Johnson's name when he was filling orders. Petitioner claimed that his joke was taken out of context and that he just thought the name of the town was funny. Kelso informed petitioner that he had decided that petitioner was to be terminated for the incident.

The testimony of Kelso was presented next. Kelso testified that he was petitioner's supervisor and that, upon learning that the office of the inspector general was investigating petitioner, he met with petitioner on September 12, 2005, and again on September 14 and 15. The first meeting was simply to set up the second meeting and petitioner was informed he would be allowed to present his side of the story. Kelso testified that petitioner admitted to using CTA information and resources to call Johnson on August 25, 2005. Petitioner explained that his brother and sister-in-law lived in Moorhead and they often joked about the town's name, but did not explain to Kelso why it was a joke. Petitioner was remorseful and apologetic about the incident.

Kelso explained that this concerned him because they cannot have employees utilize customer information to contact them for personal or social reasons. Kelso stated that he

determined this was in the detriment of the service. Although petitioner did not specifically admit to making a sexual joke, Kelso testified that the inappropriate comments made by petitioner as reported by the investigator made the violation even more serious. Kelso determined that he had no assurance that it would never happen again and concluded that he had to terminate petitioner's employment for his violation of the rules. Kelso stated that he also did not want to pass this problem off on another manager.

Kelso admitted that petitioner's discharge notice did not mention a complaint of any sexually inappropriate behavior. However, discharge notices only contain the rules violation underlying the decision to discharge, not the conduct at issue. Kelso also admitted that he was not aware of any progressive discipline program at the CTA. Despite petitioner's lack of disciplinary problems in the past, Kelso rested his concern that the incident could be a recurring problem simply because it happened once.

Petitioner testified on his own behalf. Petitioner testified to his education and almost 22 years' service for the CTA, without incident. Petitioner testified that on the date of the incident, he was student permit coordinator, but was filling in for a vacationing coworker in Internet sales. On the date of the incident, petitioner spotted Johnson's name on the list of customers and called her. After identifying himself and talking with Johnson, petitioner realized this was not the same woman and he then informed her of the benefits of a Chicago Card.

During the call, Johnson informed petitioner that she had just relocated from Minnesota. Petitioner testified that he had been to Moorhead frequently and often joked that he found the name of the town funny. Johnson did not ask why it was a funny name and petitioner did not

6

explain the humor or dwell on the subject. The phone call then ended.

Petitioner next heard about the phone call when he met with Bobko in Galvan's office. Petitioner admitted that making the call was wrong and stated that he would not do it again. When told by Bobko that the complaint was a "sexual harassment thing," petitioner denied asking Johnson on a date or any comment or question regarding Johnson's sexual practices. Other than the Moorhead comment, petitioner could not conceive how anything could substantiate a harassment claim. Petitioner however later claimed Moorhead was a joke simply because the name of the town of Moorhead sounds funny.

Petitioner testified that on September 12, 2005, he met with Kelso, who gave him notice of his discharge pending a hearing and told him that he could return on September 14, 2005, to offer his account of the phone call. At the hearing before Kelso and Galvan, petitioner asserted that he did not intend anything sexually toward Johnson. On September 15, 2005, Kelso read the charges against petitioner and gave him his notice of discharge. The notice included citations to rules violations, but did not note any detail regarding anything done that was sexual in nature.

On February 15, 2006, the Board passed an ordinance affirming petitioner's dismissal. Petitioner filed a writ of *certiorari* to the circuit court, seeking review of the Board's decision. Following the denial of respondents' motion to dismiss for lack of subject matter jurisdiction, a hearing was held, and the trial court affirmed the Board's findings. This appeal followed.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

First, we address the trial court's denial of respondents' motion to dismiss based on a lack

of subject matter jurisdiction. Respondents raise this issue in their response brief and acknowledges that it did not file notice of a cross-appeal. However, they note that the issue of subject matter jurisdiction cannot be waived and no notice was required to preserve the issue. *Ruff v. Industrial Comm'n*, 149 Ill. App. 3d 73, 78 (1986). We review *de novo* a trial court's jurisdictional ruling. *Siakpere v. City of Chicago*, 374 Ill. App. 3d 1079, 1081 (2007).

Respondents argue that a court may only review an administrative action as provided by law. See *Walters v. Department of Labor*, 356 Ill. App. 3d 785, 788 (2005), citing Ill. Const. 1970, art. VI, §6 (appellate court); Ill. Const. 1970, art. VI, §9 (circuit court). As the parties agree that the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2004)) was not adopted by this statute, the normal rules of statutory construction must be followed to determine if judicial review is limited or entirely precluded. *Hanrahan v. Williams*, 174 Ill. 2d 268, 273 (1996). Respondents conclude that if the legislature expressly intends to preclude judicial review, as it argues it has in section 28, a common law writ of *certiorari* may not be issued to review the Board's decision. *Hanrahan*, 174 Ill. 2d at 273.

Respondents argue that the plain language of the Act required the trial court to grant its motion to dismiss the petition for writ of *certiorari* pursuant to section 2-619(a)(1) of the Illinois Code of Civil Procedure. 735 ILCS 5/2-619(a)(1) (West 2004). Specifically, respondents highlight the following portion of section 28 of the Act:

"No officer or employee in regular employment shall be discharged or demoted except for cause which is detrimental to the service. Any officer or employee in regular employment who is discharged or demoted may file a complaint in writing

8

with the Board within ten days after notice of his or her discharge or demotion. If an employee is a member of a labor organization the complaint may be filed by such organization for and in behalf of such employee. The Board shall grant a hearing on such complaint within thirty (30) days after it is filed. The time and place of the hearing shall be fixed by the Board and due notice thereof given to the complainant, the labor organization by or through which the complaint was filed and the Executive Director. The hearing shall be conducted by the Board, or any member thereof or any officers' committee or employees' committee appointed by the Board. The complainant may be represented by counsel. If the Board finds, or approves a finding of the member or committee appointed by the Board, that the complainant has been unjustly discharged or demoted, he or she shall be restored to his or her office or position with back pay. The decision of the Board shall be final and not subject to review." 70 ILCS 3605/28 (West 2004).

Respondents assert that the plain language of the last sentence quoted above clearly evidences the legislature's intent to preclude judicial review of any Board decision.

Respondents note that the only recorded case considering section 28 did not discuss subject matter jurisdiction; thus this is a matter of first impression for this court. *Stanulus v. Budd*, 1 Ill App. 2d 334 (1953). The *Stanulus* court affirmed the dismissal of the common law *certiorari* proceedings challenging the petitioner's dismissal for falsification of his employment application. Jurisdiction was not raised by the parties and the court specifically found that, based on the facts, the Board's discharge decision was reasonable. *Stanulus*, 1 Ill. App. 2d at 337.

9

Respondents assert that the *Stanulus* court's denial of the writ in that case does not argue for a finding that judicial review is proper and this appeal should be dismissed pursuant to the plain language of the statute and *Hanrahan*.

Petitioner counters that, by implication, *Stanulus* supports his argument that judicial review is not precluded. Even though the jurisdiction issue was not raised by the CTA, the circuit court and this court both reviewed the Board's discharge order and affirmed dismissal on the merits. *Stanulus*, 1 Ill. App. 2d at 336-37. Accordingly, petitioner asserts, the *Stanulus* court's review and decision on the merits that the Board decision was neither arbitrary nor capricious supports review of his appeal.

Petitioner argues that the language of the Act does not provide the clarity respondents argue. Petitioner notes that the sentence upon which respondents place reliance immediately follows discussion of the effect of a Board decision to restore employment, not a discharge or demotion. Quoting *Hanrahan*, petitioner asserts that it is important to consider if the statute contains " 'standards, goals, or criteria' " to provide a "meaningful standard" by which the courts may evaluate the Board's action and determine if it properly exercised its discretion. *Hanrahan*, 174 Ill. 2d at 273-74, quoting *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 498 (1998); *Heckler v. Chaney*, 470 U.S. 821, 830, 84 L. Ed. 2d 714, 723, 105 S. Ct. 1649, 1655 (1985). Petitioner argues that the legislature's use of "cause" in section 28 provides a sufficient standard to support meaningful judicial review. Without citation to any case law, petitioner claims that "[i]t is obvious that there is a plethora of cases in Illinois defining the word 'cause,' " and judicial review is actually supported by *Hanrahan*.

Despite petitioner's failure to cite any supporting case law defining "cause," we agree that judicial review is not precluded in this case. There is no dispute that the Board undertakes a quasi-judicial role under section 28 of the Act and that review under the Administrative Review Law is not available. Accordingly, in addition to the express language of the statute, we must consider the structure and objectives of the statutory scheme and whether the standards exist to support review and the nature of the action involved. *Greer*, 122 Ill. 2d at 497-98. We begin this review with a presumption of reviewability. *Greer*, 122 Ill. 2d at 497.

We agree that, viewed in its entirety, section 28 is unclear as to whether the Board has unreviewable discretion in discharging an employee. The sentence relied upon by respondents on its own would provide for a clear limit on judicial review. However, as the sentence appears directly after a discussion of the situation involving a Board decision to restore employment with back pay, it is uncertain if all review is precluded.

It is interesting that neither party notes that the *Stanulus* court found the standard of section 28, "cause detrimental to the service," to be undefined, but accepted the Board's construction of the phrase as reasonable in that case. *Stanulus*, 1 Ill. App. 2d at 337. The court noted that "[i]t is fair to conclude that an employer has the right to expect of his employees, regardless of the kind of work performed by them, the qualities of truthfulness, honesty and integrity, and it would follow that the lack of such qualities manifestly would be detrimental to the operation of an employer's business." *Stanulus*, 1 Ill. App. 2d at 337. The *Stanulus* court agreed that the petitioner's falsification of his employment application was sufficient to meet this standard and upheld the Board's decision to discharge the petitioner. *Stanulus*, 1 Ill. App. 2d at 337. As

11

petitioner generally asserts, subsequent case law has provided further guidance on this issue. In discharge cases, the agency has discretion to determine if the employee's conduct is " 'detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.' " *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n*, 85 Ill. 2d 547, 551 (1981), quoting *Kreiser v. Police Board*, 40 Ill. App. 3d 436, 441 (1976), *aff'd* 69 Ill. 2d 27 (1977).

Unlike in *Hanrahan*, a parole-release decision, there is a sufficient standard to provide review. In *Hanrahan*, our supreme court found that the statutory scheme for parole decisions provided guidelines for when to deny parole, but not for when to grant parole. Because parole-release decisions are often based on subjective factors and predictions rather than objective factors, there were no standards by which to base meaningful review. *Hanrahan*, 174 Ill. 2d at 276-78. Accordingly, the court found that the parole-release decision differed from other cases and issuance of a common law writ of *certiorari* would be improper. *Hanrahan*, 174 Ill. 2d at 281.

In this case, there is the standard of "cause detrimental to the service" and case law to support review. The statute requires the classification of regular and exempt employment, and provides security to regular employees by requiring cause for discharge or demotion and the ability to appeal that decision to the Board. Following this, the presumption of reviewability of the Board's quasi-judicial function may not be overcome. Therefore, review under a common law writ of *certiorari* was proper to determine if the Board's findings of fact were against the manifest weight of the evidence or if the Board's exercise of its discretion was arbitrary and capricious.

12

1-07-0560

*Hanrahan*, 174 Ill. 2d at 272-73.

### B. Manifest Weight of the Evidence

As we have found that review is supported in this case, we follow the same standard of review of an administrative decision under common law *certiorari* as we do for an action filed pursuant to the Administrative Review Law. *Hanrahan*, 174 Ill. 2d at 272. Therefore, we must first determine if the Board's decision was against the manifest weight of the evidence. *Kimball Dawson, LLC v. City of Chicago Department of Zoning*, 369 Ill. App. 3d 780, 786 (2006); see also 735 ILCS 5/3-110 (West 2004). To find a determination against the manifest weight of the evidence requires a finding that all reasonable people would find that the opposite conclusion is clearly apparent. *North Avenue Properties, L.L.C. v. Zoning Board of Appeals*, 312 Ill. App. 3d 182, 184 (2000).

As the hearing officer is the fact finder responsible for overseeing testimony, making credibility determinations and assigning weight to statements made by witnesses, we review the decision of the Board, not the circuit court. *Ahmad v. Board of Education of the City of Chicago*, 365 Ill. App. 3d 155, 162 (2006). In making this determination, we do not weigh the evidence or substitute our judgment for that of the administrative agency. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). Simply put, if there is evidence of record that supports the agency's determination, it must be affirmed. *Abrahamson*, 153 Ill. 2d at 88.

Petitioner argues that even if there is some evidence to support the decision, it must be overturned if the consideration of all of the evidence demonstrates the finding is against the

13

1-07-0560

manifest weight of the evidence. *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205, 211 (2006). Petitioner contends that even a cursory review of the evidence demonstrates that the CTA "obviously" failed to meet its burden of proof. Petitioner highlights that Johnson was not presented to testify at the hearing and any statements attributable to her would not be considered. Accordingly, petitioner asserts the record is devoid of proper evidence that he acted improperly.

However, as the trial court properly concluded, there was no purpose to serve in requiring Johnson's presence. Petitioner admitted to making the personal call from information obtained from Johnson's e-mail submission, from a work phone, and during work hours. Petitioner admitted that his motivation was personal and that he did not make any other calls from that list of customers. Petitioner's argument that the uncontradicted evidence proved that he engaged in a CTA-related conversation with Johnson did not remove the fact that the admitted impetus for the call and initial conversation was for personal reasons. Accordingly, the Board's finding that petitioner undertook personal business, while on company time, and with company resources was within the manifest weight of the evidence.

With respect to the nature of the call and the reference to Moorhead, Minnesota, petitioner also admitted to discussing the town with Johnson. Petitioner continues to maintain that he only joked about the town because he finds the name, in and of itself funny, and not because of any sexual context. However, the testimony of both Bobko and Galvan indicated that, after first denying any recall of the name of the town, then denying any sexual context, petitioner admitted that the joke was a sexual joke. At the hearing, petitioner denied that was the context of

14

the joke. As noted above, as the trier of fact, the Board is charged with making credibility determinations of the witnesses. Based on the record, a finding that petitioner made an inappropriate sexual joke was within the manifest weight of the evidence.

Applying the facts of the record to the alleged violations also supports a finding that the Board's decision that petitioner violated the rules was supported by the manifest weight of the evidence. The notice of discharge that was sustained by the Board indicated that petitioner violated particular rules of personal conduct barring: conduct unbecoming an employee; abuse of the telephone; use of obscene language; performing personal work while on duty/diverting CTA resources for personal use; abuse of company time; and disrespect to the public. In addition, the notice cited violations of the rules requiring the use of best judgment and being courteous at all times. It is clear that petitioner admitted to completing personal business during work hours and using CTA resources. This in itself was sufficient to support a finding that these rules were broken. The finding that petitioner made a sexual reference during this conversation further supports this finding.

### C. Arbitrary and Unreasonable

We next consider if the Board's decision to discharge petitioner based on these facts was arbitrary and unreasonable. *Applegate v. Department of Transportation*, 335 Ill. App. 3d 1056, 1062 (2002). In this case, we must determine if the Board's factual findings were sufficient to support petitioner's discharge for cause. *Applegate*, 335 Ill. App. 3d at 1062. If the agency relies on factors that the statute does not intend, fails to consider an issue, or the decision is so implausible, the decision may be reversed as arbitrary and unreasonable. *Sanchez v. Ryan*, 315 Ill.

App. 3d 1079, 1086 (2000). However, we again grant great deference to the Board's decision because it is in the best position to determine the effect of petitioner's actions on its operations. *Applegate*, 335 Ill. App. 3d at 1062.

Petitioner asserts that the decision to discharge him was arbitrary and capricious as progressive discipline would have been proper. Petitioner asserts that respondents' rules provide for progressive discipline. However, evidence of these rules was not made of record and we cannot consider them in support of petitioner's argument, but must presume that the decision on this issue was proper. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 546-47 (1996).

Petitioner also maintains that the discharge decision on its own was excessive and, therefore, arbitrary and unreasonable. Petitioner notes that the trial court agreed that the penalty was indeed steep for what appeared to be a one-time indiscretion in more than 21 years of employment. We agree that this fact makes petitioner's argument colorable. However, we must agree with the trial court that it is not the province of a reviewing court to determine a lesser-punishment or devalue the effect of the decision on the agency's operations.

Petitioner claims that his behavior was neither malicious nor intentional, nor was it a repeated occurrence, and, thus, it did not rise to a level to support discharge. Petitioner cites to several cases in support of his argument that his discharge was unreasonable. See *Batley v. Kendall County Sheriff's Department Merit Comm'n*, 99 Ill. App. 3d 622 (1981); *Fox v. Illinois Civil Service Comm'n*, 66 Ill. App. 3d 381 (1978). However, as respondents note, these cases each considered the totality of the circumstances and that the improper behavior was either an offhand remark or the result of provocation. The totality of the circumstances here is

distinguishable, and obviously petitioner was not provoked into making an improper decision.

Petitioner was a public employee for an agency that exists to provide direct service to the public. Petitioner utilized information submitted by a customer for a personal purpose unrelated to the customer's request. While petitioner did provide information to Johnson that could have been beneficial to her, the fact remains he admitted that he made the call for personal reasons. Furthermore, during the call, he made a joke with a sexual reference.

Clearly, these actions were a violation of the rules on personal conduct, use of best judgment and courtesy. While the punishment imposed was harsh, petitioner clearly violated the public trust by using personal information submitted to a public agency for his personal purposes. Petitioner was not provoked and did not simply disparage the CTA or utter obscenities, but actively used customer information to reach out to Johnson for personal reasons. Respondents found that this was cause detrimental to the service and that petitioner's actions were intolerable and warranted dismissal to assure they did not occur again. While a tough sanction, it cannot be said to be arbitrary and unreasonable.

## III. CONCLUSION

Accordingly, for the aforementioned reasons, the decision of the Board is affirmed.

Affirmed.

NEVILLE, P.J., and CAMPBELL, J., concur.