**Michael KOGER, Plaintiff,**

v.

**Donald N. SNYDER et al., Defendant.**

No. 99–CV–3281.

United States District Court, C.D. Illinois.

March 4, 2003.

Gary Cline, Springfield, IL, for Plaintiff.

Christopher L. Higgerson, Office of Illinois Attorney General, Springfield, IL, for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

BAKER, District Judge.

### I.

This case was tried by the court sitting with a jury on February 18 and 19, 2003. The plaintiff, Michael Koger, an inmate of the Illinois Department of Corrections (IDOC), appeared personally accompanied by his attorney, Gary Cline, Esq.[1]

---

1. Mr. Cline accepted representation of the plaintiff at the behest of Mr. Cline's parish priest who also was a chaplain at the Jacksonville Correctional Center. The court thanks Mr. Cline for his professionalism and his *pro bono* service.

The case originally was cast against twenty defendants.[2] Six of those defendants were dismissed before trial for failure to state a claim for relief or failure to obtain service of process.[3] The defendants at trial were Paul Barnett, Charles Campbell, Edward Burleski, Donald Bowman, Roger Cosaro, Randy Tinsman, Blair Leibach, John Myers, Victor Dozier, Audrey Guymon, Bonita Orington, Susan Franklin, Norman Kelly, and Gary Wyman, each of whom was an employee of IDOC at the times relevant to the case. The named defendants, with the exception of Myers, appeared personally accompanied by their counsel, Christopher Higgerson and Stephanie Straughn, Illinois Assistant Attorneys General. Myers, called as a witness by the plaintiff, testified during the trial by telephone conference.

At the close of the plaintiff's evidence, he voluntarily moved to dismiss all defendants except Barnett. The motion was allowed and all defendants, except Barnett, were dismissed with prejudice. The defendant, Barnett, then moved for judgment as a matter of law and the court allowed the motion for the reasons hereinafter stated.

## II.

The facts of the case are uncomplicated and uncontested. The legal conclusions to be drawn from those facts are what is in controversy here. Koger was assigned to the Danville Correctional Center where he held a job as a law clerk. He describes himself as a "jail house lawyer" and it is apparent that in his job as law clerk he helped his fellow inmates with litigation in which they had an interest. Koger kept copies of the papers for inmates to whom he rendered assistance.[4] He kept those files of papers in his cell and at the time of the occurrences that led to this lawsuit, Koger had about twenty boxes of file materials in his cell. His cellmate, Williams, had about six boxes that were not files but personal property. Those boxes were in a cell with dimensions of approximately six feet by nine feet that also contained a double deck bunk, a sink, a toilet, a desk and a cabinet.

On the evening of October 20, 1997, two metal rods that were being sharpened into shanks were discovered hidden in the housing unit where Koger's cell was located. The entire facility was placed on lockdown with permission from the central administration of the IDOC and on October 24th a shake-down of the cells in the unit was begun to look for weapons. The special tactical team, or the Orange Crush as the inmates call it, was employed for this purpose. The specially trained correctional officers wear orange clothing and carry batons. They arrived in Koger's cell block at about 8:00 a.m. and began to search the cells.

Officers Campbell and Pearson entered Koger's cell, told him and Williams to strip naked and provided them with jumpsuits. Koger and Williams were then placed in handcuffs and taken to the day area of the cell block. Campbell and Pearson pro-

2. The docket shows twenty-one original defendants, but defendant Wyman is listed twice.

3. Defendants Snyder, Nichols, Freeman and Buscher were dismissed on a Rule 12(b)(6) motion, and defendants Oakley and Pearson were dismissed under Rule 4(m).

4. The court infers that the documents were copies. There was no evidence that they were original documents. Inmate Robert Failing testified that Koger had copies of Failing's papers but that Failing had the originals. The court's observation and experience are that inmates hang on to their original papers and would have stored copies with Koger or in the prison library storage space that was provided for such storage but was not secure.

ceeded to clean out the cell of all the personal belongings and boxes that were there. They testified that it took them over an hour to get everything out of the cell and loaded into laundry carts. The carts were taken to the end of the gallery where the contents were dumped onto the conveyor belt of a fluoroscope machine and examined for contraband material. Campbell and Pearson filled out a shake-down slip for what they found in Koger's cell.

The documents in the case indicate that Koger had property that violated the institution rules. Campbell listed such things as a razor blade, a screw driver, bleach, and sand paper along with other unauthorized possessions. After being examined, the property was taken to the property section of the prison but not before Koger and Williams were allowed to claim one or two boxes of personal items to be returned to their cell. Koger had the opportunity to go to the property section later to sort out the material but the prison witnesses say he declined. Koger says that the files were so mixed up that sorting them out would have been an impossible job.

Koger was written a disciplinary ticket for the materials found in his cell and was transferred to segregation. The ticket was rewritten to charge Koger with lesser offenses and the Adjustment Committee gave him a reduction to C Grade for two months. Koger was fired from his law clerk job and on November 17, 1997 was transferred on the order of the defendant Paul Barnett to Centralia Correctional Center, a lateral transfer to a similar security level institution.

Paul Barnett was the warden at Danville at the time of the occurrences charged. On the day of the shake-down he was called to Koger's cell block to see the amount of material in Koger's cell because it was so voluminous. Barnett judged the cell was a fire hazard and approved the clearing out of the cell. He also ordered the lateral transfer to Centralia. He said he judged Koger to be a disruptive inmate who did not accept the confiscation of the property in his cell and that his "continued presence at Danville was counter productive not only to the inmate population but that his continued presence at Danville would allow him to create spurious and counterfeit retaliation case."[5] Koger's continued presence, Barnett said, would only "have contributed to, in his mind, more significant retaliatory case." Barnett also said that he wanted "to send a message to the population the type of excess property violation couldn't be tolerated." The defendant Barnett was not the most articulate witness the court has encountered, but his statements indicate that he transferred Koger in anticipation of his becoming a quarrelsome, contentious and disruptive influence at Danville because of his attitude about the shake-down and the confiscation of his litigation files and further to impress upon the Danville inmates that limitations on property in a cell would be enforced.

### III.

The initial question for the court is this: What constitutional right was infringed?

 A penitentiary inmate has no Fourth Amendment expectation of privacy in his person or papers, *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and the search and seizure carried out at Koger's cell was legitimate. It was not undertaken for reasons of retaliation as Koger claims without support, but, sparked by the discovery of *the metal rods being sharpened into shanks*, was to look for weapons and other contraband. Koger's cell was not singled

---

5. Transcript of Paul Barnett testimony, p. 56.

out for search. The tactical team searched other cells in the housing unit. If the IDOC employees wrongfully destroyed or failed to return Koger's property, his remedy is not in this court but before the Illinois Court of Claims. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393, (1984). See also *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

■ A penitentiary inmate has no constitutional right to assignment to a specific institution or to a specific job within an institution. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *see also Thomas v. Ramos*, 130 F.3d 754, 760 (7th Cir.1997); *DeTomaso, v. McGinnis*, 970 F.2d 211, 212–13 (7th Cir. 1992); *Joihner v. McEvers*, 898 F.2d 569 (7th Cir.1990). He has no constitutional right to be a "jail house lawyer," and his writings related to jail house lawyering are not afforded any greater protections than other inmate-to-inmate communications. *Shaw v. Murphy*, 532 U.S. 223, 226, 121 S.Ct. 1475, 149 L.Ed.2d 420, (2001) (inmates do not have "First Amendment right to provide legal advice that enhances the protections" otherwise available under *Turner*); *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987) (restrictions on inmate communications to other inmates is constitutional if they are "reasonably related to legitimate penological interests").

■ Koger certainly was not denied access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2179–80, 135 L.Ed.2d 606 (1996); *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir.2000); *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir.1998) (actual injury occurs when plaintiff blocked from litigating a nonfrivolous case). Consider this lawsuit and the resources of the court and the defendants that have been invested in resolving Koger's claims. His transfer did not in any way deny him access or the ability to press ahead with this litigation.

■ Moreover, what happened to him, the loss of his property, his job, and his lateral transfer to Centralia were not constitutionally protected matters. In the pretrial order submitted by counsel for all the parties and accepted by the court, the issue presented is retaliation for being a jail house lawyer and filing grievances. The evidence adduced by the plaintiff does not bear that out and no reasonable jury could find that Koger's activities as a law clerk or his filing grievances led to retaliation. *Cf. Lewis v. Casey*, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (retaliation against prisoners for filing lawsuits is actionable under § 1983); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir.1996); *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir.2000) (acts which are constitutional can become unconstitutional if done in retaliation for the exercise of a constitutionally protected right).

■ Barnett articulated legitimate penological reasons for transferring Koger and for removing the files from his cell. If he thought Koger was a contentious and disruptive inmate at Danville and wanted to send a message to other Danville inmates that excess property violations would not be tolerated, then it would be within his right as warden to transfer him. " '[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' " *Turner*, 482 U.S. at 84, 107 S.Ct. 2254, (*quoting Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).) " '[P]rison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.' " *Id.* at 89, 107 S.Ct. 2254, (*quoting Jones v. North Carolina Prisoners' Labor*

*Union,* 433 U.S. 119, 128, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977).)

The plaintiff failed to present sufficient evidence that would permit a reasonable inference that the defendant Barnett retaliated against him for exercising a constitutionally protected right. The defendant has articulated legitimate penological reasons for his actions. Accordingly, it is ordered that the clerk enter judgment in favor of the defendant Barnett and against the plaintiff. The parties shall bear their own costs. The case is terminated.